[Cite as *State v. Boden*, 2013-Ohio-4260.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26623 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| DAVID A. BODEN | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2012-02-0535 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2013

BELFANCE, Judge.

{¶1} David Boden appeals from his convictions in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} Three women accused Mr. Boden of engaging in sexual conduct with them without their consent. C.E., Mr. Boden's biological daughter, alleged that Mr. Boden had engaged in sexual conduct with her following a night of heavy drinking. R.C., the daughter of Mr. Boden's girlfriend, alleged that Mr. Boden had repeatedly had sex with her while he was living with her mother and that this had occurred both before and after she turned 18. M.K., whose mother also lived with Mr. Boden, accused him of forcibly raping her on multiple occasions. Mr. Boden admitted to engaging in sexual conduct with each of the women but claimed that each incident was consensual and occurred when the women were older than 18.

{**¶3**}　　On March 7, 2012, Mr. Boden was indicted on four counts of rape and five counts of sexual battery. A supplemental indictment charged Mr. Boden with an additional count of rape and an additional count of sexual battery. The matter proceeded to trial, and Mr. Boden was found guilty of four counts of sexual battery and one count of rape. A count of rape and a count of sexual battery were dismissed, and Mr. Boden was acquitted of the remaining charges, including all charges related to M.K. The trial court sentenced Mr. Boden to 19 years in prison. Mr. Boden has appealed, raising three assignments of error for our review.

## II.

## ASSIGNMENT OF ERROR I

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE CRIMES CHARGED BEYOND A REASONABLE DOUBT.

{**¶4**}　　In Mr. Boden's first assignment of error, he argues that his convictions were against the manifest weight of the evidence. We disagree.

{**¶5**}　　In reviewing a challenge to the weight of the evidence, the appellate court

[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**C.E.**

{**¶6**}　　Mr. Boden was convicted of violating R.C. 2907.03(A)(2)/(A)(3),[1] R.C. 2907.03(A)(5), and R.C. 2907.02(A)(1)(c) by committing sexual battery and rape against C.E.

---

[1] The trial court's judgment entry indicates that Mr. Boden was found guilty of violating R.C. 2907.03(A)(2)/(4). However, Mr. Boden was indicted for violating R.C. 2907.03(A)(2) or

Mr. Boden does not argue that his conviction for violating R.C. 2907.03(A)(2)/(A)(3) with regard to C.E. is against the manifest weight of the evidence. Accordingly, we confine our analysis to his convictions for violating R.C. 2907.02(A)(1)(c) and 2907.03(A)(5). *See State v. Harmon*, 9th Dist. Summit No. 26426, 2013-Ohio-2319, ¶ 9, citing *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998) and App.R. 16(A)(7).

{¶7} R.C. 2907.02(A)(1)(c) provides in pertinent part that

[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *.

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2907.03(A)(5) provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." Sexual conduct is defined as

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

---

(A)(3). Given the indictment and the evidence at trial, it appears the trial court's reference to R.C. 2907.03(A)(4) is a clerical error.

{¶8}   C.E. testified that she first met Mr. Boden when she was 17.  Mr. Boden and her mother picked C.E. up from school and that was when she first learned that Mr. Boden was her father.  Mr. Boden would also refer to her as his daughter.  She testified that her son called Mr. Boden "papa" and that Mr. Boden would buy her children gifts.

{¶9}   According to C.E., she went over to Mr. Boden's house on the evening of January 26, 2011, with her friend James Holmes to obtain some marijuana from Mr. Boden.  At the time, C.E. was married.  Mr. Boden invited them to stay and drink with him and another man identified as JD.  The four of them drank whiskey and some beer.  C.E. and JD left to buy more alcohol from a nearby gas station.  When they returned, they found shots of liquor poured for each person.  C.E. remembered drinking the shot but did not remember anything else until the next day when Mr. Boden woke her up and told her that her brother was there.  She was bottomless and did not understand why her pants and her underwear were on the floor.  However, she passed out again and when she woke up later, she had to go to work.  C.E. testified that, when she woke up, she felt like she "was having an out-of-body experience."  By the time she arrived at work, she started to feel better and began to figure out what had happened.  She went to the hospital to be examined.

{¶10}  Mr. Holmes testified that he was at Mr. Boden's home with C.E. on night of January 26, 2011.  Although he had only met Mr. Boden once before, he knew him as C.E.'s father because that was how Mr. Boden had introduced himself.  He testified that he and C.E. drove separately to Mr. Boden's house and arrived around nine or ten in the evening.  They drank with Mr. Boden and another man named JD, and, at one point, C.E. and JD went to buy more alcohol for the group.  While they were gone, Mr. Boden poured shots for everyone, which they drank when C.E. and JD returned.  After C.E. drank the shot she seemed totally different.

"[S]he [wa]s just slurring words more than usual, loss of balance. It * * * didn't seem right." Mr. Holmes testified that he had never seen her so bad before.

{¶11} According to Mr. Holmes, he decided to leave around 4 a.m. because he had to work in three hours. He knew that C.E. could not drive but also believed that he could not drive her home because her husband would be upset with him. He decided that it would be best for C.E. to stay with Mr. Boden, whom he believed to be her father. Mr. Boden told Mr. Holmes to take C.E. to his bedroom, which Mr. Holmes did. When they got to the room, Mr. Holmes passed C.E. off to Mr. Boden, and C.E. "plopped" onto Mr. Boden's bed. Mr. Holmes left the bedroom, but Mr. Boden remained, shutting the door behind Mr. Holmes.

{¶12} Russell Bassett, an officer with the Akron Police Department, arrested Mr. Boden on February 18, 2012. When Officer Basset informed Mr. Boden he was under arrest for rape, Mr. Boden told Officer Basset that C.E. had come over the previous January and "they were over there partying and drinking, he passed out, he woke up with [C.E.] blowing him." Officer Bassett interpreted Mr. Boden's statement to be referring to oral sex.

{¶13} Sergeant David Garro testified that he was the lead investigator on the case and that, when he spoke with Mr. Boden, Mr. Boden admitted to having sex with C.E. but that the sex was consensual. He told Sergeant Garro that C.E. had been "incoherent and drunk[]" and that he had woken up to find C.E. playing with his genitals. When he told her that the situation was wrong, C.E. "called him back to the bed and was on all fours * * * saying, ['H]ey, does it look like I don't want this[?']" Mr. Boden then had sexual relations with her. Mr. Boden also told Sergeant Garro that, a couple months before he slept with C.E., C.E., her mother, and her aunt "had come to * * * where he was staying and tried to break down a door to have sex with

him. * * * [T]hey wanted him, and were going to force themselves upon him * * *." Mr. Boden insisted that C.E. was not his biological daughter.

{¶14} Nikki Michota, a forensic nurse examiner for D.O.V.E., testified that she examined C.E. at St. Thomas Hospital. C.E. appeared upset and told Ms. Michota that she had no memory of what had happened. She also told Ms. Michota that Mr. Boden was her father. As part of the examination, Ms. Michota took swabbing samples from C.E.'s vagina and anus. Ms. Michota also collected C.E.'s underwear.

{¶15} Lindsey Nelsen-Rausch, a forensic scientist for the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified that she examined the samples taken during the medical examination of C.E. The vaginal and anal swabs contained semen. She also determined that there was semen present on C.E.'s underwear and cut patches from it to forward for DNA testing. Heather Bizub, a forensic scientist for BCI, testified that she received DNA samples from C.E., Mr. Boden, and C.E.'s mother and conducted a paternity test to determine whether Mr. Boden was C.E.'s father. The results indicated that there was a 99.9999% chance that Mr. Boden was her father.

{¶16} Mary Cicco testified that she worked at the Miami Valley Regional Crime Laboratory and that she had received samples from C.E.'s examination for testing. According to Ms. Cicco, when she tested the vaginal swabs, she found DNA consistent with C.E. and DNA consistent with Mr. Boden. Similarly, Ms. Cicco's analysis of the anal swabs and the samples of C.E.'s underwear detected Mr. Boden's DNA as being present. Ms. Cicco also conducted a paternity test and determined that Mr. Boden could not be excluded as a possible father for C.E.

{¶17} Mr. Boden testified that he was concerned about how much everyone had drank and offered to let people stay at his house. Mr. Holmes told Mr. Boden he had to work and JD,

whom Mr. Boden identified as James Goodrich, said he was going to leave as well. However, C.E. decided to stay and Mr. Boden told Mr. Holmes to take C.E. upstairs and "put her in one of the bedrooms." Mr. Holmes took C.E. upstairs and then left. Mr. Boden went upstairs to lay down and found C.E. in his bed fully clothed. Mr. Boden was tired so he lay down next to her and went to sleep.

{¶18} According to Mr. Boden, he awoke to find C.E. "playing with [his] groin." He got out of the bed and said that they should not continue doing that. C.E. took off her pants and got on her hands and knees; she said to Mr. Boden, "Did I say no?" Mr. Boden then proceeded to have sex with her. After they finished, C.E. got up and put her pants back on. When Mr. Boden suggested that they talk about what had just happened, C.E. responded that it was nothing. He testified that, throughout the time, C.E. did not appear to be drunk and that her speech was not slurred.

{¶19} There is no dispute that Mr. Boden engaged in sexual conduct with C.E. Mr. Boden admitted that he had sexual relations with her albeit consensual. With respect to his conviction for violating R.C. 2907.05(A)(5), Ms. Bizub testified that the DNA test indicated that there was a 99.9999% chance that Mr. Boden was C.E.'s biological father. Furthermore, C.E. testified that she thought Mr. Boden was her biological father, and both C.E. and Mr. Holmes testified that Mr. Boden held himself out as her father. Thus, the evidence presented at trial would also allow a jury to determine not only that C.E. was Mr. Boden's biological daughter but also that Mr. Boden knew she was. After a thorough review of the record, we cannot conclude the jury's determination that Mr. Boden had violated R.C. 2907.03(A)(5) is against the manifest weight of the evidence.

{¶20}  Regarding Mr. Boden's conviction for violating R.C. 2907.02(A)(1)(c), there was evidence that C.E. consumed a substantial quantity of alcohol.  Everyone agrees that Mr. Holmes, C.E., Mr. Boden, and JD spent the entire night drinking.  Mr. Holmes testified that he saw C.E.'s demeanor change considerably after an additional shot of alcohol and that C.E. was very intoxicated, was having trouble standing, and was slurring her words.  Mr. Holmes observed he had never seen her so bad before.  Mr. Boden admitted that at one point in the night C.E. was incredibly intoxicated, and C.E. testified that she could not remember any part of the evening after she took the shot that Mr. Boden had put out for her upon return from the store.  Furthermore, there was evidence that C.E. was so impaired that she could not leave Mr. Boden's home by herself and C.E. could not even get to a bedroom by herself; rather, Mr. Holmes had to take C.E. to a bedroom.   The jury could conclude from the evidence presented that C.E. was intoxicated to the point that her "ability to resist or consent [wa]s substantially impaired because of a mental or physical condition[,]" R.C. 2907.02(A)(1)(c), and that Mr. Boden knew that she was.  *See State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, ¶ 21 (2d Dist.) (noting that "voluntary intoxication is a 'mental or physical condition' that could cause substantial impairment under R.C. 2907.02(A)(1)(c)").  *See also In re King*, 8th Dist. Cuyahoga Nos. 79830, 79755, 2002-Ohio-2313, ¶ 18-24; *State v. Martin*, 12th Dist. Brown No. CA99-09-026, 2000 WL 1145465, *4-*5 (Aug. 14, 2000).

{¶21}  Nevertheless, Mr. Boden "asserts that voluntary intoxication is not the type of mental or physical impairment that the legislature intended when enacting ORC [] 2907.02 * * *."  However, Mr. Boden has not cited any authority in support of this assertion nor developed any further argument on this point.  *See* App.R. 16(A)(7).  *See also State v. Brown*, 9th Dist. Summit No. 25287, 2011-Ohio-1041, ¶ 40, quoting *Cardone*, 1998 WL 224934, at *8 ("As this

Court has repeatedly held, '[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.'").

{¶22} After our thorough review of the record, we cannot conclude that the jury lost its way and committed a manifest injustice when it determined that Mr. Boden had committed rape pursuant to R.C. 2907.02(A)(1)(c).

**R.C.**

{¶23} The jury found Mr. Boden guilty of two counts of sexual battery against R.C. pursuant to R.C. 2907.03(A)(5). One count was for the time period of January 1, 2001, through September 26, 2003, and the other was from September 27, 2003, through June 12, 2007. R.C. 2907.03(A)(5) provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶24} R.C. testified that she was born September 26, 1985. In 1991, her mother married Mr. Boden and, although Mr. Boden and her mother divorced less than a year later, they continued to live together. During the time R.C. lived with Mr. Boden, he laid out very strict rules that she needed to abide by and would punish her if she disobeyed him. Mr. Boden would also buy her games and clothes when her mother could not afford them. According to R.C., Mr. Boden began requiring her to perform oral sex on him when she was ten. He also would touch her on the chest when they watched television together. Eventually, Mr. Boden began engaging

in sexual intercourse with her two to three times per week, sometimes at the house, sometimes in a hotel, and sometimes at a lake. When she refused to engage in sexual conduct with him, Mr. Boden would punch her in the face. This continued until she moved out in 2007.

{¶25} R.C. testified that, on May 22, 2004, she gave birth to Mr. Boden's daughter and gave her up for adoption. She told her high school counselor about the situation with Mr. Boden. The counselor called the police, and the police took R.C. to St. Thomas Hospital to be examined. The nurse swabbed R.C.'s vaginal area and collected her underwear. The hospital sent her to a women's shelter, but she voluntarily left two days later because she had no money and was still in school. When she returned home, Mr. Boden forced her to write a statement claiming to drop all the charges and to ask that no further investigation occur. She then went and had the statement notarized.

{¶26} Sergeant Garro testified that, when he spoke with Mr. Boden about R.C.'s allegations, Mr. Boden told him he had had consensual sex with R.C. and that he had written documentation to prove it. Mr. Boden also told Sergeant Garro that R.C. had had four abortions related to their relationship and that he was also possibly the father of her child.

{¶27} Andrea Dennis, a forensic scientist with BCI, testified that she examined the samples collected from R.C. during her examination at St. Thomas Hospital. She detected semen as being in the vaginal swab. She also detected semen on R.C.'s underwear. Ms. Bizub testified that she tested the vaginal swab and the underwear for DNA and compared the results against a DNA sample from Mr. Boden. According to Ms. Bizub, the vaginal sample contained two profiles of DNA: a major one consistent with R.C. and a minor one that could only be identified as male. However, the sample of the underwear contained a DNA profile consistent with Mr. Boden.

{¶28} Mr. Boden admitted that he had engaged in sexual relations with R.C. but denied ever sleeping with her before her 18th birthday in September 2003. Mr. Boden also denied living in the same home as R.C. beyond the time he was married to her mother.

{¶29} Mr. Boden was convicted of violating R.C. 2907.03(A)(5), which proscribes sexual conduct when the offender is a stepparent or stands in loco parentis to the other person, during two different time periods: (1) January 1, 2001, to September 26, 2003, and (2) September 27, 2003, to June 12, 2007. R.C. testified that, following Mr. Boden's divorce from R.C.'s mother, Mr. Boden continued to live in the home; during that time, Mr. Boden would discipline R.C. while also buying her clothing and presents. From this testimony, the jury could find that Mr. Boden was a person in loco parentis to R.C. *See State v. Noggle*, 67 Ohio St.3d 31, 33 (1993) ("The phrase 'person in loco parentis' in R.C. 2907.03(A)(5) applies to a person who has assumed the dominant parental role and is relied upon by the child for support."). R.C. also testified that Mr. Boden engaged in sexual conduct with her from the time she was ten, which would have been in 1995, until she moved out for good on June 12, 2007. If believed, her testimony would allow the jury to determine that violations of R.C. 2907.03(A)(5) occurred between January 1, 2001, and September 26, 2003, as well as between September 27, 2003, and June 12, 2007. Furthermore, Mr. Boden testified that he had engaged in sexual conduct with R.C. after her 18th birthday, which would allow the jury to determine that Mr. Boden violated R.C. 2907.03(A)(5) at least once between September 26, 2003, and June 12, 2007.

{¶30} Nevertheless, Mr. Boden argues that his conviction for violating R.C. 2907.03(A)(5) between January 1, 2001, and September 26, 2003, is against the manifest weight of the evidence because R.C.'s testimony should not be believed. He points to the notarized statement signed by R.C. in which she asserted that she first had sex with Mr. Boden on

September 26, 2003, and to the fact that she had filed and then withdrawn a request for a civil protection order. R.C. testified that she had withdrawn the request for a protection order after being informed by a judge that she could not get one. She also testified that she had signed the notarized statement under duress from Mr. Boden. Mr. Boden's attorney cross-examined her on both of these issues, and the jury was free to believe or disbelieve her testimony. *See State v. Andrews*, 9th Dist. Summit No. 25114, 2010–Ohio–6126, ¶ 28.

{¶31} Mr. Boden also argues that he was not a person in loco parentis as required by R.C. 2907.03(A)(5) because he was married to R.C.'s mother for less than a year and R.C. never viewed him as a parent. However, "[t]he term 'in loco parentis' means 'charged, factitiously, with a parent's rights, duties, and responsibilities.'" *Noggle*, 67 OhioSt.3d at 33, quoting Black's Law Dictionary 787 (6th Ed.1990). "A person in loco parentis has assumed the same duties as a guardian or custodian, only not through a legal proceeding. A 'person in loco parentis' was grouped with guardians and custodians in the statute because they all have similar responsibilities." *Noggle* at 33. R.C.'s testimony that Mr. Boden lived with her since she was six, that he bought her clothing and gifts when needed, and that he was the disciplinarian who set the rules in the house could establish that he had acted as a guardian or custodian of her. The fact that she testified that she did not like Mr. Boden does not alter his position of authority over her during her childhood. *See id.* (The in loco parentis provision "was not designed for teachers, coaches, scout leaders, or any other persons who might temporarily have some disciplinary control over a child. Simply put, the statute applies to the people the child goes home to.").

{¶32} After a thorough review of the record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice when it determined that Mr. Boden had engaged in sexual conduct with R.C. when he was a person in loco parentis.

{¶33}  Mr. Boden's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL[.]

{¶34}  Mr. Boden argues in his second assignment of error that the trial court should have declared a mistrial when the prosecutor suggested that Mr. Boden could have brought text messages in "to prove [his] innocence[.]"  We disagree.

{¶35}  "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible."  *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462–463 (1973) and *Arizona v. Washington*, 434 U.S. 497, 505–506 (1978).  "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected.  Great deference is afforded to a trial court's decision regarding a motion for mistrial.  Accordingly, this Court reviews the denial of a motion for mistrial for an abuse of discretion."  (Internal citations, alterations, and quotations omitted.) *State v. Howes*, 9th Dist. Summit No. 24665, 2010–Ohio–421, ¶ 11.  An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶36}  During Mr. Boden's testimony, the prosecutor questioned him about his statement to Detective Garro that C.E., her mother, and her aunt had attempted to break down his door to have sex with him.  Mr. Boden told the prosecutor that he had played a voicemail proving that this had happened to the first detective that had interviewed him but he no longer had that voicemail.  He then told the prosecutor, "I have text messages that prove it, that can back that up."  Mr. Boden testified that he had told Detective Garro that his girlfriend had these text messages.  He also testified that he had told her not to turn them over to the police "because of

the simple fact that that is [his] evidence, so why would [he] have to give [his] evidence to a man that is trying to put [him] in jail * * *." Then the following exchange occurred:

[Prosecutor:] * * * [W]e don't have that here, do we?

[Mr. Boden:] If you would like it, I'm sure he could call and have it brought here. I'm sure that wouldn't be a problem.

[Prosecutor:] You guys arranged when you were going to get up here and testify, correct?

[Mr. Boden:] Correct.

[Prosecutor:] And your lawyer and you didn't decide to bring in these proposed text messages you have to prove your innocence?

At that point, Mr. Boden's counsel objected and moved for a mistrial, arguing that the prosecutor had just placed the burden on Mr. Boden to prove his innocence. The trial court denied his motion for a mistrial, but instructed the jury as follows:

All right, ladies and gentlemen, there was a last statement made as part of a question regarding the defendant's [(sic)] to prove his innocence. First of all, I am going to strike that question, order you to disregard it, and remind you of my beginning instruction, and you will be instructed again when all of the evidence is completed, the defendant has no burden of proof in this matter. He doesn't have to prove his innocence. The burden of proof is on the State of Ohio in this Case.

**{¶37}** Mr. Boden argues that the trial court's instruction was insufficient to cure the effect of the prosecutor's question and suggests that, at the very least, the court needed to allow defense counsel to question the jurors as to whether they understood the instruction. However, Mr. Boden has not cited to any authority to support this argument, *see* App.R. 16(A)(7), nor did his trial counsel request to voir dire the jury about the instruction at the time.

**{¶38}** It is important to remember that "[m]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *Franklin*, 62 Ohio St.3d at 127. While the prosecutor's question was improper, it is evident that the prosecutor was attempting to attack Mr. Boden's credibility as to the existence of the text messages by pointing out that, if the text

messages were so helpful, it did not make sense that Mr. Boden was not introducing them into evidence. Mr. Boden's counsel objected to the improper question, the objection was sustained, and the trial court gave a thorough curative instruction. A jury is presumed to follow the trial court's instructions, and Mr. Boden has not pointed to anything in the record that indicates that the jury failed to do so. *See State v. Garner*, 74 Ohio St.3d 49, 59 (1995); *see also Franklin*, 62 Ohio St.3d at 127-128. Thus, under these circumstances, we cannot say that the trial court abused its discretion when it denied Mr. Boden's request for a mistrial. *Howes*, 2010–Ohio–421, at ¶ 11.

{¶39} Mr. Boden's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED APPELLANT'S MOTION FOR SEVERANCE[.]

{¶40} In Mr. Boden's third assignment of error, he argues that the trial court erred in denying his Crim.R. 14 motion to sever the charges in the indictments. We disagree.

{¶41} "The law favors joining multiple criminal offenses in a single trial[.]" *Franklin* at 122. However, "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses * * * in an indictment, * * * the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." Crim.R. 14. To prevail on a motion to sever, a defendant has the burden of demonstrating three facts:

> (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.

*State v. Schaim*, 65 Ohio St.3d 51, 59 (1992).

**{¶42}** Although Mr. Boden moved pursuant to Crim.R. 14 to sever the counts in his indictment prior to trial, he did not renew his motion at the close of the State's case or at the conclusion of the evidence. *See State v. Miller*, 9th Dist. Lorain Nos. 10CA009922 & 10CA009915, 2012–Ohio–1263, ¶ 17 ("To preserve a claimed error under Crim.R. 14, * * * a defendant must renew his * * * motion to sever either at the close of the State's case or at the conclusion of all of the evidence."). "A renewal of the motion is necessary because a Crim.R. 14 analysis examines any prejudice resulting from the joinder in light of the evidence introduced at trial." *State v. Hoffman*, 9th Dist. Summit No. 26084, 2013-Ohio-1021, ¶ 9. A defendant's failure to renew his Crim.R. 14 motion "results in a forfeiture of the issue on appeal." *State v. Vu*, 9th Dist. Medina No. 1 1CA0042–M, 2012–Ohio–746, ¶ 37. Thus, we review the trial court's denial of Mr. Boden's motion to sever for plain error.

**{¶43}** To establish plain error,

> "[f]irst, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights [ ]' [to the extent that it] * * * affected the outcome of the trial."

*State v. Hardges*, 9th Dist. Summit No. 24175, 2008–Ohio–5567, ¶ 9, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). However, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶44}** We first examine Mr. Boden's claims of prejudice. *See Schaim*, 65 Ohio St.3d at 59. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *Id*. Mr.

Boden argues that the evidence of the crimes involving C.E. would not be admissible in a separate trial for the crimes involving R.C. and vice versa. However, assuming, without deciding, that Mr. Boden is correct that the evidence of the crimes would not be admissible if the crimes were tried separately, Mr. Boden still must demonstrate that the evidence was not simple and distinct. *See id*.

{¶45} In addressing whether the evidence is simple and distinct, Mr. Boden makes a very limited argument which is factually incorrect. He argues that the evidence is not simple and distinct because there was an "overlap of information from victim to victim" which made it difficult or impossible to separate the specific instances of conduct. Mr. Boden avers that R.C. testified that she had spoken to C.E. who told R.C. "that she wanted to have sex with [Mr. Boden]." However, Mr. Boden misstates R.C.'s testimony. While R.C. testified that M.K. had told her she wanted to have sex with Mr. Boden, Mr. Boden was acquitted of all charges related to M.K. R.C. did testify that she knew C.E., but there was no overlapping testimony between R.C. and C.E. related to the crimes.

{¶46} Furthermore, while the crimes were similar in that they involved sexual conduct, there is little similarity between the facts or any portions of the testimony. C.E. is Mr. Boden's biological daughter with whom he had no relationship until she was 17 while R.C. was Mr. Boden's stepchild with whom he lived and acted as a father figure. The evidence of the incident involving C.E. indicated that it was a single event during which Mr. Boden engaged in sexual conduct with an extremely intoxicated individual. By contrast, the evidence concerning the incidents involving R.C. indicated that they were repeated over an extended period of time beginning when she was ten-years-old, involved no alcohol, and occurred as a result of Mr. Boden's position of power over R.C. as a person in loco parentis.

**{¶47}** Mr. Boden's alleged crimes involved different victims and different behavior. Thus, under the circumstances and based on Mr. Boden's limited appellate argument, we cannot conclude that the trial court's denial of his motion to sever the charges constituted an abuse of discretion rising to the level of plain error. *See Schaim*, 61 Ohio St.3d at 59; *Hardges*, 2008–Ohio–5567, at ¶ 9.

**{¶48}** Mr. Boden's third assignment of error is overruled.

### III.

**{¶49}** Mr. Boden's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

19

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.