[Cite as *State v. Greathouse*, 2017-Ohio-6870.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

DAVID GREATHOUSE

    Appellant

C.A. No.      27782

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      CR 2013 05 1382

DECISION AND JOURNAL ENTRY

Dated: July 19, 2017

SCHAFER, Judge.

{¶1} Defendant-Appellant, David Greathouse, appeals the judgment of the Summit County Court of Common Pleas convicting him of several sex-related crimes. For the reasons set forth below, we affirm.

I.

{¶2} In 2000, authorities investigated Greathouse for sexually abusing A.D., a nine-year-old foster child who was residing with Greathouse's mother at the time. The investigation began when A.D. told her school counselor that Greathouse was sexually abusing her. Matthew Hudak of the Barberton Police Department was the primary detective assigned to the case. Following an investigation into the matter, the State elected not to file criminal charges against Greathouse at that time.

{¶3} In March 2013, M.S., a 13-year-old girl, disclosed to her mother that she was being sexually abused by Greathouse, who was her mother's boyfriend at the time. M.S.'s

mother simultaneously learned that M.S. had been cutting herself due to the trauma caused by the abuse. M.S.'s mother ultimately took M.S. to the Akron Children's Hospital emergency room to treat her lacerations. While M.S. was being treated for her wounds, M.S.'s mother informed Deputy Matthew Petroc of the Summit County Sheriff's Office that her daughter was cutting herself because Greathouse had been sexually abusing her since she was eight years old. Deputy Petroc filed a report and referred the matter to the detective bureau for further investigation. The hospital staff also referred the matter to Summit County Children Services.

{¶4} The detective bureau referred M.S.'s case to Detective Joseph Storad, who subsequently interviewed Greathouse about M.S.'s accusations. Greathouse denied ever sexually abusing M.S., but acknowledged that M.S. was an honest individual who did not lie. During the course of the interview, Greathouse informed Detective Storad that he was previously accused of sexually abusing another child, A.D., approximately 13 years prior. Following his interview with Greathouse, Detective Storad retrieved the old police report concerning A.D.'s allegations against Greathouse. Detective Storad then met with A.D., who is now an adult, and listened as she described being sexually abused by Greathouse when she was a child. Detective Storad and A.D. later met with an assistant prosecutor with the Summit County Prosecutor's Office to discuss this incident.

{¶5} On April 9, 2013, the Summit County Grand Jury returned a no bill, refusing to indict Greathouse on one count of rape and one count of gross sexual imposition. However, the State resubmitted the case to the Grand Jury with additional charges. Consequently, on May 30, 2013, the Summit County Grand Jury returned a secret indictment charging Greathouse with

seven counts of rape,[1] one count of sexual battery, five counts of gross sexual imposition, and one count of illegal use of a minor in nudity-oriented material or performance. Greathouse pleaded not guilty to the charges and the matter proceeded through the pretrial phase. The State ultimately dismissed the one count of illegal use of a minor in nudity-oriented material or performance charge prior to trial. On July 31, 2013, Greathouse filed a motion sever Count One of the indictment from Counts Two through Fourteen, to which the State responded in opposition. The trial court held a hearing on Greathouse's motion to sever before ultimately denying it. On August 7, 2013, Greathouse signed a waiver of his speedy trial rights.

{¶6} On February 17, 2015, the first day of trial, Greathouse filed a "motion dismiss indictment or severe [sic] Count One from trial." The trial court addressed and denied Greathouse's motion in a pretrial conference. The matter then proceeded to a jury trial, wherein the State called 12 witnesses to testify on its behalf and Greathouse called six witnesses on his behalf. At the close of evidence, the jury found Greathouse guilty of all counts. The trial court subsequently sentenced Greathouse according to law.

{¶7} Greathouse filed this timely appeal and raises three assignments of error for this Court's review.

II.

**Assignment of Error I**

**The Appellant's due process rights were violated where the State of Ohio engaged in behavior that caused a prejudicial pre-indictment delay.**

---

[1] The seven counts of rape were numbered as Counts One through Seven of the indictment. Count One related to Greathouse's actions with respect to A.D. in 2000, whereas Counts Two through Seven related to Greathouse's actions with respect to M.S. from 2008 through 2013.

**{¶8}** In his first assignment of error, Greathouse argues that the trial court erred by denying his motion to dismiss Count One of the indictment. Specifically, Greathouse argues that the State violated his due process rights by waiting approximately 13 years to charge him for raping A.D. Greathouse contends that the 13-year delay prejudiced him because "the memories of the parties involved in the investigation became diminished," his mother, who possessed key information, had passed away, and the doctor who examined A.D. in 2000 could not be located for trial.

**{¶9}** We note at the outset that Greathouse neither raised the issue of pre-indictment delay, nor asserted a violation of his due process rights in the trial court. Thus, as Greathouse raises the issue of pre-indictment delay for the first time on appeal, he has forfeited all arguments with respect to this issue but for that of plain error. *See State v. Wilson*, 8th Dist. Cuyahoga No. 102921, 2016-Ohio-2718, ¶ 61, ("[A]s [appellant] raises the issue of preindictment delay for the first time on appeal, we review for plain error.") citing *State v. Berry*, 10th Dist. Franklin Nos. 97AP-964, 98AP-256, 1999 WL 437217, *12 (June 29, 1999) and *State v. Turner*, 168 Ohio App.3d 176, 2006-Ohio-3786, ¶ 21 (5th Dist.). For an error to be a "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule; (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, paragraph three of the syllabus.

{¶10} As previously noted, Greathouse failed to raise the issue of pre-indictment delay either in his motion to dismiss, during the hearing on his motion to dismiss, or at any other time during trial. A review of the record indicates that Greathouse questioned in his motion to dismiss whether the State, in securing an indictment against him following an initial "no bill," either misled the Grand Jury about the evidence or failed to disclose exculpatory evidence during the grand jury proceedings in violation of his due process rights. The transcript from the hearing on Greathouse's motion to dismiss reveals that the hearing was strictly limited to the issue raised in Greathouse's motion. As such, because Greathouse failed to create a record in the trial court addressing the issue of pre-indictment delay, we cannot say, based on the face of the record, that any action taken below amounted to an obvious defect in the proceedings. Thus, we conclude based upon the record before us that the pre-indictment delay in this matter does not rise to the level of plain error. *See State v. Vu*, 9th Dist. Medina No. 11CA0058-M, 2012-Ohio-2002, ¶ 53 (determining that appellant's alleged errors with the jury instructions "cannot constitute plain error" since the errors were "not clear on the face of the record[.]"), quoting *State v. Vu*, 9th Dist. Medina No. 11CA0042-M, 2012-Ohio-746, ¶ 42.

{¶11} Accordingly, Greathouse's first assignment of error is overruled.

### Assignment of Error II

**The Appellant's due process rights were violated where the State failed to preserve evidence of Dr. McDonald's [medical] diagnosis finding no physical evidence of sexual abuse.**

{¶12} In his second assignment of error, Greathouse argues that his conviction on Count One for the rape of A.D. must be reversed and dismissed since the State violated his due process rights by failing to preserve potentially useful evidence. Specifically, Greathouse argues that the State violated his due process rights by failing to preserve a prescription dated September 30,

2000, that is purportedly signed by the doctor who examined A.D. following her allegations against him.  The prescription states that there was no evidence of physical genital abuse.

{¶13}  "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence." *State v. McClain*, 2d Dist. Montgomery No. 26764, 2016–Ohio–838, ¶ 21.  Consequently, "the suppression of *exculpatory* evidence that is material to guilt or punishment violates due process without respect to whether the [S]tate acted in bad faith." (Emphasis sic.)  *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015–Ohio–5042, ¶ 48.  However, "[w]hen the State fails to preserve evidence that is merely '*potentially useful*,' a defendant must demonstrate that the [S]tate acted in bad faith." (Emphasis added.)  *Id.,* quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also State v. Geeslin*, 116 Ohio St.3d 252, 2007–Ohio–5239, ¶ 9–10.

{¶14}  To begin, Greathouse has framed this assignment of error as one concerning "preservation" of evidence.  There is no question that the doctor's prescription was preserved, as the original script was discovered amongst Greathouse's mother's personal effects and a copy of the script was located within the case file stored with the Barberton Police Department.  Rather, the crux of Greathouse's argument concerns the fact that the investigating detectives never forwarded the prescription to the prosecutor's office and that it was never disclosed to the defense prior to trial.  The prescription only came to light when Greathouse discovered the original by chance while sifting through his deceased mother's journal just six weeks before trial.  Thus, we conclude the facts of this case implicate suppression or disclosure of potentially useful evidence rather than preservation.  However, this Court does not review this assignment of error

under *Brady v. Maryland*, 373 U.S. 83 (1963), because Greathouse has failed to make that argument on appeal. *See* App.R. 16(A)(7).

{¶15} To the extent that Greathouse argues that the State failed to preserve the doctor's prescription in violation of his due process rights, we disagree. It is undisputed that the prosecution was unaware of the existence of the doctor's prescription until defense counsel brought it to their attention on the first day of trial. In his appellate brief, Greathouse contends that certain law enforcement personnel acted in bad faith in this matter. Namely, Greathouse asserts that:

> either Detective Hudak removed the copy of the prescription sheet with [the doctor's] diagnosis before faxing [the contents of the case file] to Detective Storad or that Detective Storad removed [the prescription] before turning the report over to the prosecutor's office. In any event, it is evident that one of those two police officers engaged in behavior that was designed to prevent [Greathouse] from gaining access to very useful information.

However, when the parties addressed this issue below, Greathouse's trial counsel emphasized that the defense was not accusing Detective Storad, Detective Hudak, or the prosecuting attorneys of "anything improper." Rather, the defense was only questioning Detective Hudak's "thoroughness in submitting the entire file to Detective Storad." Thus, on this basis alone, we reject Greathouse's argument on appeal that Detective Storad and/or Detective Hudak acted in bad faith. *See State v. Dunn*, 9th Dist. Wayne No. 03CA0037, 2004-Ohio-2249, ¶ 63 ("Bad faith implies more than bad judgment or negligence; instead, it 'imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'") (internal citation omitted), citing *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983). Accordingly, we conclude that Greathouse's due process rights were not violated on the basis that potentially useful evidence was not preserved.

{¶16} Greathouse's second assignment of error is overruled.

**Assignment of Error III**

**The trial court committed reversible error by failing to sever Count One of the indictment from the remaining counts in the indictment.**

{¶17} In his third assignment of error, Greathouse argues that the trial court erred by denying his motion to sever. Specifically, Greathouse contends that it was erroneous for the trial court not to sever the rape charge corresponding to A.D., which occurred in 2000, from the remaining counts which all pertain to M.S. and occurred several years later. Since Greathouse forfeited this issue for appellate review and has failed to argue plain error in the trial court's denial of his motion, we disagree.

{¶18} Crim.R. 8(A), which governs joinder of multiple offenses for trial, provides:

[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

Crim.R. 14 governs the joinder of offenses, whether in a single or separate indictment(s), for trial. *State v. Hatfield*, 9th Dist. Summit No. 23716, 2008–Ohio–2431, ¶ 14. A defendant is entitled to severance under Crim.R. 14 if he can establish that he is prejudiced by a joinder of offenses. *Id.* Prejudice is shown where "(1) [a defendant's] rights were prejudiced by the failure to sever, (2) [the defendant] provided the court sufficient information to allow it to weigh the benefits of joinder against his right to a fair trial, and (3) the trial court abused its discretion by refusing to sever the charges for trial given the information it had been provided." *State v. Harris*, 1st Dist. Hamilton No. C-980553, 1999 WL 335058, *2 (May 28, 1999), citing *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). However, "the state can overcome a defendant's claim of

prejudicial joinder by showing either that (1) that it could have introduced evidence of either of the offenses, if they had been severed for trial, as 'other acts' under Evid.R. 404(B), or (2) the 'evidence of each crime joined at trial is simple and direct.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016–Ohio–5735, ¶ 299, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990).

{¶19} Initially, we must consider whether Greathouse forfeited his challenge to the trial court's ruling on his motion to sever. This Court has held that if a defendant seeks to challenge his indictment pursuant to Crim.R. 8 on the basis that multiple counts should not have been joined in a single indictment, he need not renew a motion to sever. *Hatfield* at ¶ 14–15. "To preserve a claimed error under Crim.R. 14, however, a defendant must renew his * * * motion to sever either at the close of the State's case or at the conclusion of all of the evidence." *State v. Miller*, 9th Dist. Lorain Nos. 10CA009922, 10CA009915, 2012–Ohio–1263, ¶ 17. A renewal of the motion is necessary because, unlike a Crim.R. 8 analysis, a Crim.R. 14 analysis examines any prejudice resulting from the joinder in light of the evidence introduced at trial. *See Hatfield* at ¶ 14–15, citing *United States v. Terry*, 911 F.2d 272, 277–278 (9th Cir.1990). A defendant's failure to renew his Crim.R. 14 motion "results in a forfeiture of the issue on appeal." *State v. Vu*, 9th Dist. Medina No. 11CA0042–M, 2012–Ohio–746, ¶ 37.

{¶20} Here, Greathouse argued at the hearing on his motion to sever that he would face "insurmountable" prejudice at trial if the charges were not severed. Specifically, Greathouse argued that rather than considering the merits of each individual case, the jury would feel compelled to convict him on all counts merely because two young victims were accusing him of similar crimes. Thus, Greathouse contested his indictment pursuant to Crim.R. 14 and he was therefore required to renew his motion to sever at the close of evidence. *See State v. Abraham*, 9th Dist. Summit No. 26258, 2012-Ohio-4248, ¶ 8 ("A motion that only requests counts to be

tried separately falls squarely within the purview of Crim.R. 14."), citing *Hatfield* at ¶ 15. However, a review of the record indicates that Greathouse failed to renew his motion. Accordingly, Greathouse has forfeited all but plain error on appeal. *See id.* at ¶ 8-9.

{¶21} Although Greathouse has only preserved plain error under Crim.R. 52(B), he does not argue the existence of plain error on appeal. Indeed, his appellate brief does not mention plain error. Due to this failure to raise a plain error argument, we decline to sua sponte fashion one and then address it. *See* App.R. 16(A)(7) (requiring briefs to have "[a]n argument containing the contentions of the appellant with respect to each assignment of error * * * with citations to the authorities * * * on which appellant relies."); *State v. Cross*, 9th Dist. Summit No. 25487, 2011–Ohio–3250, ¶ 41 ("While a defendant who forfeits such an argument may still argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so."), citing *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006–Ohio–4925, ¶ 11 ("Accordingly, as Appellant failed to develop his plain error argument, we do not reach the merits and decline to address this argument.").

{¶22} Greathouse's third assignment of error is overruled.

### III.

{¶23} With all of Greathouse's assignments of error having been overruled, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

WILLIAM A. VASILIOU II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.