[Cite as *State v. Ecker*, 2018-Ohio-940.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28431 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| KEVIN ECKER | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE Nos.  CR 2016 02 0635 (A) |
| | CR 2015 03 0964 |

DECISION AND JOURNAL ENTRY

Dated: March 14, 2018

CALLAHAN, Judge.

{¶1}  Defendant-Appellant, Kevin Ecker, appeals from his convictions in the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}  J.C.H. was a young woman who struggled with addiction and lived at home with her family and three-year-old son.  On the afternoon of March 22, 2015, her family found her body on the floor of her bedroom.  There were drugs and related paraphernalia near her body, and it was later determined that she died as a result of a fentanyl overdose.  Following a brief investigation, the police identified Mr. Ecker as the individual whom they believed had provided her with the lethal dose of fentanyl.

{¶3}  The police secured a warrant to search Mr. Ecker's residence and executed the warrant two days after J.C.H. died.  During the search, they uncovered fentanyl, alprazolam, suboxone, marijuana, needles, digital scales, and drug packaging materials.  The police then

arrested Mr. Ecker and searched him, whereupon they also found two small bindles of fentanyl in his pocket.

{¶4} The foregoing events led to a grand jury indicting Mr. Ecker in Criminal Case No. 2015-03-0964. In that case, he was charged with aggravated trafficking in fentanyl, trafficking in marijuana, possessing marijuana, possessing alprazolam, possessing suboxone, illegally using or possessing drug paraphernalia, possessing drug abuse instruments, and multiple forfeiture specifications. Additional charges were then added by way of supplemental indictment. The supplemental indictment charged him with involuntary manslaughter as a result of providing J.C.H. with fentanyl, corrupting her with drugs, aggravated trafficking in fentanyl, and trafficking in marijuana.

{¶5} Mr. Ecker remained in jail for some time, but ultimately posted bond. In February 2016, the police went to his new apartment because they received a call that gunshots had been fired at or near that location. While walking through the apartment, officers observed several items that led them to conduct a search. The search uncovered fentanyl, methamphetamine, cocaine, drug packaging materials, a digital scale, and other items. As a result of the search, a grand jury indicted Mr. Ecker in Criminal Case No. 2016-02-0635(A) and charged him with aggravated trafficking in methamphetamine and fentanyl, aggravated possession of methamphetamine and fentanyl, possession of cocaine, possession of drug paraphernalia, and multiple forfeiture specifications.

{¶6} Following Mr. Ecker's 2016 indictment, the State moved to consolidate his two cases for trial. Mr. Ecker opposed the motion, and the trial court held a hearing. Over Mr. Ecker's objections, the court granted the State's motion and ordered the cases consolidated for trial.

**{¶7}** Before trial, the State dismissed several counts, and the court permitted Mr. Ecker to plead no contest to the charges of possessing alprazolam and suboxone. His remaining counts were submitted to the jury, save for his minor misdemeanor count for possessing marijuana. The jury found him guilty on all counts, and the court found him guilty of the minor misdemeanor. The court sentenced him to a total of 21 years in prison.

**{¶8}** Mr. Ecker now appeals from the court's judgment and raises four assignments of error for review.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT DENIED KEVIN ECKER A FAIR TRIAL AND DUE PROCESS OF LAW WHEN IT ALLOWED A JOINT TRIAL OF TWO DISTINCT EVENTS.

**{¶9}** In his first assignment of error, Mr. Ecker argues that the trial court abused its discretion when it joined his 2015 and 2016 indictments for trial. He argues that the evidence in each case was not simple and direct and, had each case been tried separately, the evidence from each case would have been inadmissible in the other case. This Court does not agree that the trial court abused its discretion when it joined Mr. Ecker's indictments for trial.

**{¶10}** "It is well-settled that the law favors joinder." *State v. Merriweather*, 9th Dist. Lorain No. 97CA006693, 1998 Ohio App. LEXIS 2133, *8 (May 13, 1998). "This is because joint trials 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *State v. Gordon*, Slip Opinion No. 2018-Ohio-259, ¶ 18, quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968). A trial court "may order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment * * *." Crim.R. 13. "If similar offenses are properly joined *

* *, a defendant can still move to sever the charges pursuant to Crim.R. 14 if their consolidation will prejudice his or her rights." *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992).

{¶11} "[A] Crim.R. 14 analysis examines any prejudice resulting from [] joinder in light of the evidence introduced at trial." *State v. Greathouse*, 9th Dist. Summit No. 27782, 2017-Ohio-6870, ¶ 19. A defendant claiming prejudice

> must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against [his] right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.

*Schaim* at 59. Meanwhile, a defendant's "claim of prejudice may be rebutted by the prosecution in one of two manners." *State v. Shipley*, 9th Dist. Lorain No. 03CA008275, 2004-Ohio-434, ¶ 75. *Accord Schaim* at 59. First, the State "can overcome a defendant's claim [of prejudice] * * * by showing that it could have introduced evidence of the joined offenses as 'other acts' evidence under [Evid.R.] 404(B)." *State v. Kolvek*, 9th Dist. Summit Nos. 28141, 28142, 28143, 28144, 28145, 2017-Ohio-9137, ¶ 18. Alternatively, it can show that "the evidence of each crime [is] simple and direct, such that 'the jury is believed capable of segregating the proof on each charge.'" *Id.*, quoting *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980). "[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence * * * under Evid.R. 404(B)." *State v. Lott*, 51 Ohio St.3d 160, 163 (1990).

{¶12} Initially, this Court addresses the State's contention that Mr. Ecker has forfeited his joinder argument. This Court has held on multiple occasions that, to preserve a claim of error under Crim.R. 14, a defendant "must renew his * * * motion to sever either at the close of the State's case or at the conclusion of all the evidence." *State v. Taylor*, 9th Dist. Lorain Nos.

10CA009922, 10CA009915, 2012-Ohio-1263, ¶ 17. According to the State, Mr. Ecker failed to renew his motion to sever at either time, so he is limited to a claim of plain error.

{¶13} The record reflects that Mr. Ecker repeatedly objected to the joinder of his indictments for trial. Specifically, he opposed the State's initial motion to consolidate, argued against joinder at the hearing on the motion, renewed his objection at the start of trial, renewed his objection during the testimony of the State's seventeenth witness, and renewed his objection during the testimony of the State's penultimate witness. Additionally, at the end of the trial, he renewed "all [his] prior objections and all [his] prior motions." While the better practice may have been for him to articulate a specific joinder objection at the conclusion of trial rather than make a general renewal of all of his prior motions, this Court cannot conclude that his failure to do so resulted in forfeiture. Mr. Ecker made a point of renewing all of his objections and motions and, importantly, at that time he had already articulated his prejudice argument on multiple occasions during the course of the trial. Under these particular facts and circumstances, this Court must conclude that he preserved his objection to joinder.

{¶14} Mr. Ecker argues that he was prejudiced by the joinder of his indictments for trial because it allowed the State to use the evidence against him in separate cases "as an aggregate indication as to the validity of each claim." He avers that, had his cases been tried separately, the State would not have been permitted to introduce other acts evidence from one case in the other. Further, he avers that the joinder prejudiced him because the evidence in each case was not simple and direct. He notes that the 2015 case involved complicated DNA testimony and the 2016 case posed certain obstacles for the parties, such as how to keep from the jury the fact that he was on parole at the time of his arrest. According to Mr. Ecker, he was held accountable for

the drugs the police found in the 2016 case because the jury was aware that, at the time of his arrest, he had already been charged with a homicide and multiple drug offenses.

{¶15} With respect to Mr. Ecker's 2015 case, the State presented evidence that he had been associating with the victim, J.C.H., for several months before her death. The two exchanged text messages wherein they repeatedly arranged to meet so that J.C.H. could purchase either marijuana or heroin from him. There was evidence that they were together directly before J.C.H. overdosed and that Mr. Ecker's DNA profile could not be excluded as the source of the major profile analysts found on one of the baggies in her possession when she died.

{¶16} J.C.H. died as a result of a fentanyl overdose. The State presented evidence that the police searched Mr. Ecker's residence two days after her death and found fentanyl, alprazolam, suboxone, marijuana, needles, digital scales, and drug packaging materials in his basement and two bindles of fentanyl on his person. Additionally, two former addicts testified against Mr. Ecker. The first addict testified that he spoke with Mr. Ecker after J.C.H.'s death and Mr. Ecker (1) admitted that he had sold J.C.H. narcotics just before she overdosed, and (2) stated that he was trying to secure more of that "real good dope." The second addict was present when the police raided Mr. Ecker's residence and testified that he was there because he had just purchased heroin from Mr. Ecker.

{¶17} With respect to the 2016 case, the State presented evidence that the police came to Mr. Ecker's apartment to follow up on a call they had received. There was no mention of his being on parole, but there was testimony that a search ensued because officers spotted contraband while walking through the apartment. Mr. Ecker was present at the time along with his girlfriend and another male. The search resulted in officers finding fentanyl, methamphetamine, cocaine, drug packaging materials, a digital scale, a snort straw, and three

cell phones. The narcotics that they found had been wrapped in women's underwear and tucked into a pair of women's boots. Even so, the State produced evidence that, while being held in jail on the 2015 case, Mr. Ecker made several phone calls and spoke with at least one individual about securing a new drug supplier in anticipation of his release. The State also produced evidence that, after his release, Mr. Ecker exchanged numerous text messages with people, making arrangements to sell them various narcotics. In several of the messages, he referenced having his girlfriend make his deliveries for him.

{¶18} As noted, prejudice as a result of joinder will not lie if (1) evidence of the joined offenses otherwise would have been admissible in separate trials as other acts evidence, or (2) the evidence of each crime was simple and direct. *Kolvek*, 2017-Ohio-9137, at ¶ 18. Even assuming that the other acts exception does not apply here, the record supports the conclusion that the evidence against Mr. Ecker was simple and direct. *See Lott*, 51 Ohio St.3d at 163. "Joinder may be prejudicial when the offenses are unrelated and the evidence as to each is very weak * * *, but it is otherwise when the evidence is direct and uncomplicated and can reasonably be separated as to each offense * * *." *State v. Brooks*, 44 Ohio St.3d 185, 193 (1989), quoting *State v. Torres*, 66 Ohio St.2d 340, 343-344 (1981). The evidence against Mr. Ecker was not weak. In each of his respective cases, the State produced compelling, circumstantial evidence tending to show that he possessed and trafficked in large quantities of narcotics and sold a lethal dose of fentanyl to J.C.H. The two cases pertained to different dates and locations, and "the evidence of each crime [was] uncomplicated," such that there was little danger of the jury confusing the evidence on each charge. *State v. Hamblin*, 37 Ohio St.3d 153, 159 (1988). "The fact that the jury heard cumulative evidence against [Mr. Ecker] does not by itself demonstrate prejudice, as that fact is true in every trial where indictments or defendants are jointly tried."

*State v. Samuels*, 9th Dist. Summit Nos. 25982, 25983, 25984, 2012-Ohio-5401, ¶ 13. "While a joint trial may have detracted from the believability of [his] defense, the joinder was permissible so long as the evidence of each case was simple and distinct." *Id.* at ¶ 14. Because the record supports that conclusion, this Court cannot conclude that the trial court abused its discretion when it joined his indictments for trial. *See State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 30; *State v. Boden*, 9th Dist. Summit No. 26623, 2013-Ohio-4260, ¶ 46-47. Accordingly, Mr. Ecker's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

MR. ECKER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT ALLOWED THE STATE TO PRESENT IRRELEVANT AND OVERLY PREJUDICIAL EVIDENCE ABOUT PRIOR BAD ACTS.

{¶19}  In his second assignment of error, Mr. Ecker argues that the trial court erred when it allowed the State to present irrelevant and prejudicial testimony. For the following reasons, this Court rejects his argument.

{¶20}  The decision to admit or exclude evidence lies in the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). "Absent an issue of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *State v. Aguirre*, 9th Dist. Lorain No. 13CA010418, 2015-Ohio-922, ¶ 6. An abuse of discretion indicates that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**Testimony Regarding Mr. Ecker's Unwillingness to Wear a Wire**

{¶21}  Detective Michael Schmidt interviewed Mr. Ecker at the police station following his arrest in connection with J.C.H.'s death. He testified that Mr. Ecker initially denied having sold heroin or fentanyl to J.C.H. As the interview progressed, however, Mr. Ecker admitted that

he had sold her heroin, but claimed that he had not done so for a while. The detective testified that Mr. Ecker was not willing to divulge the name of his drug supplier. He also testified, over objection, that Mr. Ecker said he was unwilling to wear a wire or act as an informant.

**{¶22}** Mr. Ecker argues that the trial court abused its discretion when it permitted Detective Schmidt to testify that he was unwilling to wear a wire. According to Mr. Ecker, that testimony constituted inadmissible, prior bad acts evidence, so the court should have excluded it under Evid.R. 404(B). He further argues that the testimony was inadmissible because it was irrelevant and substantially more prejudicial than probative. *See* Evid.R. 401 and 403(A).

**{¶23}** To the extent Mr. Ecker argues that Detective Schmidt's testimony was inadmissible under Evid.R. 404(B), this Court rejects his argument. "Not every act implies something about a person's character." *State v. Hash*, 9th Dist. Medina No. 10CA0008-M, 2011-Ohio-859, ¶ 74. Evid.R. 404(B) only protects "against the admission of other acts evidence offered for the purpose of 'proving the defendant's propensity to act in conformity *with a particular trait of his character*.'" (Emphasis added.) *State v. Barber*, 9th Dist. Summit No. 28507, 2017-Ohio-8010, ¶ 26, quoting *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 10. The fact that an individual refuses to wear a wire is not an act that bears upon a particular trait of his character. An individual might refuse to wear a wire for any number of innocuous reasons, and it is not against the law to refuse to do so. Accordingly, Evid.R. 404(B) does not apply in this instance. *See Barber* at ¶ 28; *Hash* at ¶ 74.

**{¶24}** To the extent Mr. Ecker argues that the detective's testimony was irrelevant and substantially more prejudicial than probative, this Court concludes that any error in the admission of that testimony was harmless. *See* Crim.R. 52(A) (errors that do "not affect substantial rights shall be disregarded"). The issues at trial were whether Mr. Ecker possessed

and trafficked in certain narcotics and whether he caused J.C.H.'s death by providing her with fentanyl. The State produced a wealth of evidence tending to show that he had substantial quantities of narcotics in his possession, that he admitted having sold heroin to J.C.H. before, that he, in fact, had sold her fentanyl directly before her death, and that he routinely sold narcotics to other individuals. At worst, Detective Schmidt's testimony made it appear that Mr. Ecker was unwilling to assist the police in investigating his drug supplier or other individuals involved in the drug trade. That testimony, however, had no bearing on Mr. Ecker's own culpability in the commission of the offenses with which he was charged. Because Mr. Ecker has not shown that the detective's testimony affected the outcome in this matter, this Court rejects his argument concerning the admission of that testimony. *See id.*

**Testimony Regarding the Number of Overdose Deaths in Summit County**

{¶25} Mr. Ecker also argues that the trial court erred when it allowed the State to interject testimony about the increasing number of overdose deaths in Summit County. His brief, however, contains no analysis on that point other than to note that such testimony had no bearing on his guilt. *See* App.R. 16(A)(7). Moreover, while he cites three portions of the record in support of his argument, the record reflects that he only objected on two of those occasions. Mr. Ecker did not object on the first occasion, which was the first time the State broached the subject. On that occasion, Detective Tim Harvey testified as to the increasing and specific number of overdose calls he and his partner had investigated over the last year. Later testimony simply mirrored that sentiment; noting that there had been a sizeable increase in the number of local overdose deaths.

{¶26} Mr. Ecker has not argued plain error on appeal or explained how he was prejudiced by the admission of later, cumulative testimony, given that he did not object to

Detective Harvey's testimony. *See id.* As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349, 18673, 1998 Ohio App. LEXIS 2028, * 22 (May 6, 1998). Because Mr. Ecker has not analyzed the issue of prejudice, this Court rejects his argument. His second assignment of error is overruled.

<u>**ASSIGNMENT OF ERROR NO. 3**</u>

THE PROSECUTORS' MISCONDUCT DENIED MR. ECKER A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16, OF THE OHIO CONSTITUTION.

**{¶27}** In his third assignment of error, Mr. Ecker argues that prosecutorial misconduct deprived him of a fair trial. Specifically, he argues that he was deprived of a fair trial when the prosecutors asked witnesses about the number of overdose deaths in Summit County and referenced that testimony during closing argument. This Court disagrees.

**{¶28}** In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *See State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him. *See State v. Lollis*, 9th Dist. Summit No. 24826, 2010-Ohio-4457, ¶ 24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S.

209, 219 (1982). Thus, "[t]he prosecutor's conduct must be considered in the context of the entire trial." *State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 39.

{¶29} Mr. Ecker argues that the prosecutors engaged in misconduct on four separate occasions. The first three occasions occurred during direct examination, when the prosecutors asked three different witnesses about the trend in the number of overdose deaths in Summit County. The fourth occasion occurred during closing argument, when the prosecutors cited the figures that one of those witnesses, Detective Harvey, provided on direct examination. Mr. Ecker argues that the prosecutors' questions and argument were improper and only served to inflame the passions of the jury.

{¶30} With regard to the three instances of alleged misconduct that occurred during the prosecutors' direct examinations, this Court notes that those three instances are the same ones that Mr. Ecker cited in support of his second assignment of error. As previously noted, he did not object when the prosecutors asked Detective Harvey about the increasing number of overdose investigations in Summit County. Likewise, the record reflects that he did not object when the prosecutors referenced Detective Harvey's testimony during closing argument. Because Mr. Ecker failed to object to the prosecutors' question and argument on those two occasions, he forfeited all but plain error. *See State v. Warrington*, 9th Dist. Medina No. 14CA0080-M, 2016-Ohio-244, ¶ 13 ("[W]hen a defendant fails to object to alleged prosecutorial misconduct, the defendant forfeits all argument except that of plain error."). He has not argued plain error on appeal, however, and this Court declines to construct an argument on his behalf. *See, e.g., State v. Dawson*, 9th Dist. Summit No. 28311, 2017-Ohio-2833, ¶ 36. Thus, this Court will not address the merits of his argument insofar as it pertains to those two alleged instances of misconduct.

{¶31} Even assuming that the prosecutors engaged in misconduct when they asked two witnesses about the local trends in overdose deaths, Mr. Ecker has not shown that, but for their misconduct, the jury would not have convicted him. *See Lollis*, 2010-Ohio-4457, at ¶ 24. First, the testimony that the prosecutors elicited on those two occasions was merely cumulative of the testimony they elicited from Detective Harvey. *See, e.g., State v. Christian*, 9th Dist. Summit No. 27205, 2015-Ohio-1720, ¶ 33 (admission of evidence harmless where evidence merely cumulative of other evidence presented at trial). Second, "[w]ithin the context of the entire trial, this Court concludes that [Mr. Ecker's] trial was not unfair because it appears beyond a reasonable doubt that the trier of fact would have convicted [him] even in the absence of the State's improper questioning * * *." *Pleban*, 2011-Ohio-3254, at ¶ 43. As set forth above, the State produced a wealth of evidence tending to show that Mr. Ecker had substantial quantities of narcotics in his possession, that he admitted having sold heroin to J.C.H. before, that he, in fact, had sold her fentanyl directly before her death, and that he routinely sold narcotics to other individuals. He has not shown that testimony about trends in overdose deaths, in general, affected the outcome of his trial. Accordingly, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT VIOLATED MR. ECKER'S RIGHT TO DUE PROCESS
AND A FAIR TRIAL THROUGH CUMULATIVE ERROR.

{¶32} In his fourth assignment of error, Mr. Ecker argues that cumulative error deprived him of his right to a fair trial. This Court disagrees.

{¶33} Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "'[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Hill*, 75 Ohio St.3d 195, 212

(1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509 (1983). To support a claim of cumulative error, there must be multiple instances of harmless error. *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). "Because this Court did not find multiple instances of error, the cumulative error doctrine does not apply." *State v. Jamison*, 9th Dist. Summit No. 27664, 2016-Ohio-5122, ¶ 40. Mr. Ecker's fourth assignment of error is overruled.

                                    III.

{¶34} Mr. Ecker's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

                                                    Judgment affirmed.

─────

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                    _____
                                    LYNNE S. CALLAHAN
                                    FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

STEPHEN P. HARDWICK, Assistant Public Defender, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant
Prosecuting Attorney,  for Appellee.