[Cite as *State v. Moss*, 2024-Ohio-2415.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                      Court of Appeals No.  WD-23-038

      Appellee                             Trial Court No.  2022CR0499

v.

Eddie James Moss                          **DECISION AND JUDGMENT**

      Appellant                            Decided:  June 25, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant, Eddie James Moss, appeals from the June 7, 2023 judgment of the Wood County Court of Common Pleas convicting him of one count of theft and sentencing him to a prison term of 12 months.  Dawson's single assignment of error challenges the trial court's admission of evidence under Evid.R. 404(B).  For the reasons that follow, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} On December 8, 2022, the Wood County Grand Jury indicted Moss on one count theft in violation of R.C. 2913.02(A)(1) and 2913.02(B)(2), a felony of the fifth degree. The charge arose from the theft of several bottles of champagne—priced at more than $1,000 in total—from the Meijer store in Rossford, Ohio on July 22, July 26, July 27, and August 2, 2021. Moss pleaded not guilty, and the case proceeded to a jury trial.

{¶ 3} On the day of trial, the parties discussed the admission of certain evidence in chambers before voir dire. The state planned to offer evidence of surveillance video from the Meijer store on the dates of the thefts as well as from August 7, 2021. On August 7, 2021, Moss stole a pair of sandals—not champagne—from the Rossford Meijer. The state had previously indicated its intention to present testimony from a police officer regarding Moss's arrest on August 7, 2021 as well as a certified record of Moss's conviction of a misdemeanor in Perrysburg Municipal Court. Moss opposed the admission of any evidence relating to August 7th, arguing that the evidence would be prejudicial and constitute "other acts" evidence prohibited by Evid.R. 404(B).

{¶ 4} For context, each surveillance video from the dates of the champagne thefts—July 22, July 26, July 27, and August 2, 2021—shows a very similar chain of events. In each video, Moss walked into the Rossford Meijer carrying either a yellow or green bag, got into a motorized cart, and placed the bag under his legs. Moss then drove the motorized cart to the liquor aisle, took down bottles of champagne from a high shelf—the shelf where Meijer stocked its highest-priced champagne—and placed the bottles into the basket on the front of the cart. Next, Moss drove the cart behind a nearby

2.

shelf where he is not visible on security footage. He remained in the blind spot for a few minutes and then reemerged with nothing in the cart's basket. In some videos, the bag under his feet is visibly fuller after he reappears on the security video than the bag was before he went into the blind spot. Moss then proceeded on the motorized cart out of the store without stopping at a point of purchase. Two of the videos also show Moss driving the cart through the parking lot to a gold sedan, which he loads with a bag before driving away.

{¶ 5} The August 7, 2021 video began the same as the previous videos. Moss entered the Rossford Meijer on foot with a green bag, sat down in a motorized cart, and made his way to the liquor aisle where he approached the shelf containing the higher-priced champagne. That shelf, however, had not been restocked, and Moss did not take any bottles down from the shelf. Instead, he left the liquor department and proceeded on the motorized cart to the shoe department, where he was again in a blind spot on the security video for several minutes. Moss dropped off the cart at the front of the store and walked out of the store to his gold sedan while carrying a green bag. As before, he did not stop at any points of purchase.

{¶ 6} That same day, shortly after Moss left the Meijer store, he was arrested following a traffic stop during which the officer discovered, in a green bag in Moss's vehicle, shoes from Meijer that had not been paid for. Moss was later convicted of a misdemeanor in Perrysburg Municipal Court.

{¶ 7} The state argued that the video from August 7, 2021 and evidence regarding Moss's conviction in the Perrysburg Municipal Court went to proving Moss's identity, an

3.

exception under Evid.R. 404(B), because Meijer did not know Moss's name until his arrest. Moss offered to stipulate to his identity in the videos from the dates of the thefts, and then contended that because the state did not need to prove his identity in those videos, the admission of the August 7, 2021 surveillance video and evidence regarding his misdemeanor conviction would violate Evid.R. 404(B).

{¶ 8} The trial court determined that evidence of the Perrysburg Municipal Court conviction was inadmissible. Nonetheless, the state argued that even if evidence of the conviction was inadmissible, the August 7th surveillance video was admissible to show Moss's continuing course of conduct or modus operandi. It reasoned that the video, when combined with the earlier four videos, showed Moss continued to return to the Rossford Meijer following a similar pattern—each time bringing a bag into the store, driving a motorized cart to the liquor department, placing high-priced champagne bottles in the cart's front basket, disappearing in a security video blind spot, then reemerging with nothing in the basket before driving the cart into the parking lot—until Meijer no longer had his preferred champagne in stock. The state also maintained that the August 7th video was part of the investigation into the theft of the champagne and would explain how Moss was identified as the perpetrator. Finally, the state asserted that it would not stipulate to Moss's identity in the prior surveillance videos if doing so would make the August 7th video inadmissible.

{¶ 9} The trial court took the parties' arguments under advisement.

{¶ 10} At trial, the state's first witness was Officer Brandon Lewis of the Rossford Police Department. Officer Lewis testified that Pam Peters, who handled loss prevention

4.

at the Rossford Meijer store, contacted him in the first week of August 2021 to discuss an individual whom she suspected had been stealing champagne from the store. Peters gave Officer Lewis a physical description of the suspect as well as a description of the suspect's vehicle. She called the Rossford Police Department on August 7, 2021 to report that the individual suspected of stealing champagne was in the store.

{¶ 11} Officer Lewis and his partner responded to the call. On their way to the store, they were notified that the suspect had left the store. Officer Lewis's partner then observed the gold sedan leaving the Meijer parking lot. After running a check of the vehicle registration, the officers discovered that the vehicle's registration was expired and the registered owner did not have a valid license, so they initiated a stop. The sole occupant in the vehicle was Moss. Officer Lewis testified that they began investigating the suspected theft. Moss objected.

{¶ 12} During an in-chambers discussion, Moss renewed his objection under Civ.R. 404(B) regarding the theft of the sandals and requested a limiting instruction as follows:

> [Moss's attorney]: I'm going to ask for a limiting instruction as far as the theft offense.
>
> The Court: I do have a limiting instruction. I will send it off to you both and I will have you look at that.
>
> …
>
> The Court: Maybe I wasn't clear. So I'll make it very clear. I think this incident is part of the investigation that leads them to the other incidences. That's the purpose of this. The purpose is as part of their investigation demonstrates that they can identify him. So that's what I said. That's why I've limited to not saying it's a conviction or anything else.

[Prosecutor]: The only reason we put the conviction in was to strengthen the fact he was involved in it. I understand the Court's ruling and I have no problem with that. It's to his benefit. I am thinking you're basically saying prejudicial value outweighs the probative value. But I would like to continue the line of questioning especially since they find the stolen property in the bag that he has in the car.

[Moss's attorney]: I guess that's where my objection is coming in, Your Honor.

The Court: I guess I have to know, [prosecutor]. Why do you need to have that when you've got the information that they're going to tie this in? There's a report of him supposedly doing something in there. They stop him. And it leads to the investigation of these instances.

[Prosecutor]: They were called to the store because they thought he was committing another theft on that day. And that's what he was investigating that day. He asked for it. Mr. Moss gave him permission to search the bag. That bag has been – it was also then shown on the video at the store on that date and on another date, that same bag.

The Court: I'm going to allow that in, okay.

[Moss's attorney]: Okay.

The Court: Limiting instruction: Evidence has been received about the commission of an act other than the offense with which the Defendant has been charged in this trial. That evidence has not been received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity nor in accordance with that character. The State has the burden of proving each element of the offense charged in this trial beyond a reasonable doubt. The State cannot satisfy its burden merely by implying the Defendant committed the charged offense because of other acts suggesting a propensity to commit acts.
…
The Court: Are you good with that instruction?

[Moss's attorney]: Yeah. I would note it's going to be a continuing objection. I don't want to stand up every time.

The Court: The Court is going to note continuing objection.

6.

{¶ 13} Officer Lewis then continued testifying. First, he identified Moss as the person he stopped. Next, Officer Lewis testified that he had learned from dispatch that the theft suspect had been carrying a green bag in Meijer, and Officer Lewis noticed a green bag in the vehicle. Moss consented to Officer Lewis's search of the bag, and inside Officer Lewis found a black Nike jacket and a pair of sandals, still zip-tied together, with a Meijer tag on them. Officer Lewis testified that he then took Moss into custody.

{¶ 14} The court gave the jury the limiting instruction agreed to in chambers, and Officer Lewis was excused.

{¶ 15} Next, Pamela Peters, the asset protection team leader for the Rossford Meijer store, testified. She testified that in July 2021, store associates notified her that they had discovered security devices known as "spirit caps" that appeared to have been removed from champagne bottles in the liquor department. Meijer places spirit caps on higher-priced bottles of champagne to prevent theft. The caps are made of steel, and they prevent the bottle from being opened and set off an electronic alarm system at the store's exit. When a customer purchases a champagne bottle protected by a spirit cap, a Meijer employee must use a special key—kept at registers or in Peters's office—to remove the cap. The store associates said the spirit caps they found appeared to be cut or bent, and Peters said that in the past, thieves had used snippers or wrench-type devices to remove the spirit caps. Peters testified that in July 2021, the store associates found the spirit caps in the first parallel shelving area of the liquor department, the same shelving area where Moss disappeared on the surveillance videos.

7.

{¶ 16} After learning about the broken spirit caps, Peters reviewed security footage of the liquor department, watching the top shelf area where higher-priced champagne bottles with spirit caps were displayed to determine when the bottles went missing.

{¶ 17} The state then played surveillance videos from July 22, 26, 27, and August 2, 2021 with Peters providing testimony explaining the videos. In each video, Moss was wearing similar clothing and accessories—including a mask worn below his nose, a cane, a gold watch, and sunglasses. In three of the four videos, Moss was wearing a wide-brim hat and carrying a green bag (in the first video, he was carrying a yellow bag), and in two of the videos, Moss was wearing the same shirt. On July 27, Moss was recorded arriving in and returning to a gold sedan after leaving the store, and on August 2, Moss was recorded returning to the gold sedan in the parking lot.

{¶ 18} Peters also identified the brand, type, and price of each bottle of champagne taken. In total, 20 bottles of champagne were taken, and the combined price of all 20 bottles was over $1,000. She stated that during the period between July 22 and August 2, the shelf containing the higher-priced champagne was not restocked and the store's records from that period showed none of those bottles had been purchased.

{¶ 19} Finally, the state questioned Peters about August 7, 2021, and Moss objected. Moss argued that because his identity had already been established in the four previous videos, the August 7th video was unnecessary to establish his identity. The state argued that because the video went to identification, the video was admissible. The trial court overruled the objection.

8.

{¶ 20} Peters maintained that as of August 7, 2021, she was aware of the champagne theft and of Moss's appearance, but she did not yet know Moss's name. When the greeters at the entrance of the store spotted Moss on August 7th, she contacted the Rossford Police and then searched for Moss in the store. Peters testified that no liquor was stolen on August 7.

{¶ 21} The state requested permission to play the video from August 7th, and the trial court instructed the parties to have an in-chambers discussion regarding the video. Moss objected to the video again, explaining, "I think my objection is going to be what are we showing on the video on the 7th. Are we showing him stealing sandals?" The trial court asked the state if it was possible to show the video without including any footage of Moss stealing the sandals, and the state agreed that it was. Moss continued to explain his objection as follows:

> [Moss's attorney]: If the jury hears, yeah, Officer Lewis stopped him and I found sandals that were stolen.
>
> The Court: That's already been established.
>
> [Prosecutor]: That's in there already. It's in the green bag. This just shows he's got the green bag in the store. That's the one they apparently found in the car.
>
> [Moss's attorney]: Okay. I'll just note my objection.
>
> The Court: You've got your objection. I want to note it.

{¶ 22} Peters continued her testimony as the state played the August 7 surveillance video, beginning with the footage of the gold sedan entering the parking lot. Peters had shown the greeters working near the front entrance of the Rossford Meijer a still shot of

9.

Moss from previous security videos and instructed them to contact her if they saw him. In the August 7th video as shown to the jury, Moss is seen walking across the parking lot with similar accessories as in previous videos: a baseball hat, a green bag, and a cane. After Moss entered the store, as he was getting into a motorized cart, a greeter is seen using a telephone. Peters stated that the greeter would have called her at that time. Moss is then seen approaching the shelf where the higher-priced champagne was normally stocked. He looked at the shelf, which has not been restocked since his last visit, and drove away.

{¶ 23} At this point, the trial court instructed the state to stop the video and directed the parties to chambers where the following discussion occurred:

> The Court: What I want to know is that at this point why do we need to show any more video?
>
> [Prosecutor]: I've got some stills from the video. That's the only reason I would play it.
>
> The Court: I think you can admit the stills. I think at this point if the video is going to show him committing any act or doing any act –
>
> [Prosecutor]: This was how they were able to identify him. Before this date they didn't know who it was.
>
> The Court: So we've got the individual of the greeter identifying him. We've got him going to the liquor aisle and the liquor he wants to steal, may want to steal, is not there. I don't know the relevance of showing any more.
>
> [Prosecutor]: That's fine.
>
> The Court: Okay. So let's just move on.
>
> [Prosecutor]: I'll just do the stills, then end it because there's no loss on that date.

10.

The Court: He's made an objection. I'm going to limit it as much as I can.

[Moss's attorney]: Thank you.

{¶ 24} The prosecutor, after stating that the state would not play anything further from the video, asked Peters to confirm that there was no loss at the store on August 7th, and she agreed that there was not a loss on August 7th. Next, Peters testified that she contacted Rossford Police after seeing Moss in the store on August 7th, and she confirmed that Moss was the same person who was in the store on July 22, 26, 27, and August 2, 2021. The state then showed Peters still photographs from the August 7th surveillance videos, and Peters confirmed that one of the photographs showed Moss exiting the store on foot rather than driving a motorized cart, and carrying a green bag. Moss did not object to the admission of the photographs.

{¶ 25} Following Moss's cross-examination of Peters, the court took a break. In an in-chambers discussion regarding the admission of the state's exhibits, Moss renewed his objection to the admission of the video from August 7th after the point at which Moss was recorded in the liquor department—the same point when the video was stopped by the state during Peters's testimony. In response, the trial court stated that the bailiff would be instructed to prevent the jury from viewing the video beyond that point, and Moss agreed that would be fine.

{¶ 26} The state rested, and Moss moved for a directed verdict under Crim.R. 29, arguing that the state had not established the value of the champagne nor had the state

presented evidence to establish that a theft occurred. The court denied the motion, and Moss did not testify or put on any witnesses.

{¶ 27} During closing arguments, the state alleged that Moss did not take any champagne bottles on August 7, 2021 because his preferred type of champagne had not been restocked. The state pointed out that August 7th was the only date that Moss walked out of the store—instead of driving the motorized cart as he did on July 22, 26, 27, and August 2—suggesting that Moss chose to walk on August 7th because he did not need to worry about any champagne bottles clinking as he left the store. The state made no mention of the sandals found by Officer Lewis during the August 7th stop.

{¶ 28} The trial court circulated jury instructions to both the state and Moss. Neither party had any objections. Among the jury instructions was the same instruction given to the jury immediately after Peters's testimony concerning the August 7th video, as follows:

> Evidence has been received about the commission of an act other than the offense with which the Defendant has been charged in this trial. That evidence has not been received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity nor in accordance with that character. The State has the burden of proving each element of the offense charged in this trial beyond a reasonable doubt.
>
> The State cannot satisfy its burden merely by implying the Defendant committed the charged offense because of other acts suggesting a propensity to commit acts.

{¶ 29} After deliberations, the jury found Moss guilty of theft in violation of R.C. 2913.02(A)(1) and 2913.02(B)(2), and also found that the value of the property stolen

12.

was more than $1,000 and less than $7,500. The trial court sentenced Moss to 12 months in prison, and he timely appealed.

## II. Assignment of Error

{¶ 30} Moss asserts the following assignment of error for review:

> The trial court erred to appellant's prejudice by admitting evidence of an uncharged theft offense.

## III. Arguments of the Parties

{¶ 31} In support of his assignment of error, Moss argues that the trial court erred in admitting evidence of Moss's theft of sandals from Meijer on August 7, 2021. Specifically, Moss asserts that Officer Lewis's testimony regarding the events that took place after he stopped Moss on August 7, 2021, as well as the admission of the store's surveillance video from that same day contained "other acts" evidence inadmissible under Evid.R. 404(B). Moss contends that the identity exception under Evid.R. 404(B)(2) should not apply because the trial court improperly refused to accept Moss's stipulation on his identity. And he maintains the trial court improperly gave a limiting instruction regarding Evid.R. 404(B).

{¶ 32} In response, the state argues that no evidence regarding Moss's misdemeanor conviction nor the theft itself were admitted. It contends the video evidence and Officer Lewis's testimony went to the investigation of the champagne thefts and therefore were not independent of the offense for which Moss was on trial. Lastly, the state maintains the limiting instructions do not transform the evidence into propensity

13.

evidence, and even if any error existed in the limiting instructions, such error must be invited error because Moss requested the limiting instructions.

## IV. Law and Analysis

{¶ 33} Evid.R. 404(B)(1) provides that "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "Evid.R. 404(B)[(1)] categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 2020-Ohio-4441, ¶ 36, citing Evid.R. 404(B). Notably, Evid.R. 404(B)(2) provides several purposes for which "other acts" evidence is admissible, including proving the defendant's identity.

{¶ 34} Before considering whether other-acts evidence is admissible, however, a court must first determine whether Evid.R. 404(B) is even implicated. "The starting premise is that the state is introducing evidence of an act committed by the defendant to prove the defendant's propensity to commit the crime at issue." *State v. Owens*, 2019-Ohio-2221, ¶ 18 (8th Dist.). Indeed, "not every act implies something about a person's character." *State v. Ecker*, 2018-Ohio-940, ¶ 23 (9th Dist.), quoting *State v. Hash*, 2011-Ohio-859, ¶ 74 (9th Dist.); *see also State v. Barber*, 2017-Ohio-8010, ¶ 28 (9th Dist.) ("Because [the] testimony did not concern [the appellant's] character, its admission did not violate Evid.R. 404(B)."). If the evidence at issue does not involve "appellant's prior criminal conduct or bad acts," then Evid.R. 404(B) is not applicable. *State v. Bond*, 2016-Ohio-8383, ¶ 49 (6th Dist.). Evidence of entirely legal behavior, even if that

14.

behavior could potentially have been part of a criminal act, does not implicate Evid.R. 404(B). *See Hash* at ¶ 74 (9th Dist.) (holding that evidence regarding appellant's legal purchase of pseudoephedrine in the past was not character evidence under Evid.R. 404(B) even though appellant was charged with illegal assembly or possession of chemicals for the manufacture of drugs).

{¶ 35} Here, Moss argues that the trial court erred in admitting the August 7, 2021 surveillance video and permitting Officer Lewis to testify about his stop of Moss because both were inadmissible under Evid.R. 404(B). Moss appears to reason that because he stole sandals from Meijer on August 7th, any evidence relating to the events of that day must constitute evidence of his wrongdoing.

{¶ 36} But the portion of the August 7th surveillance video that was played to the jury contained no evidence of Moss's theft. The jury only saw Moss engaging in entirely legal behavior: entering Meijer and driving a motorized cart to the liquor department. The video was stopped once Moss got to the liquor department, and the jury never saw Moss going to the shoe department. Officer Lewis testified that he found sandals with a Meijer tag on them in Moss's green bag on August 7, but possession of an item with a tag on it is not a crime. Further, Peters testified that no loss occurred to Meijer on August 7th. Accordingly, nothing about Moss's acts in the portion of the August 7th video seen by the jury or Officer Lewis's testimony regarding the sandals could have implied anything about Moss's character, and therefore the admission of that evidence did not implicate Evid.R. 404(B).

15.

**{¶ 37}** Next, Moss's argument regarding the limiting instructions given to the jury likewise fails. First, because Evid.R. 404(B) was not implicated by the complained-of evidence, the trial court was not obligated to give a limiting instruction. Moreover, Moss did not object to the trial court's instruction despite multiple opportunities to do so. Failure to object to a jury instruction waives all but plain error. *State v. Owens*, 2020-Ohio-4616, ¶ 7. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "Plain error is not present unless the outcome of the trial would have been different but for the complained of error." *State v. Reynolds*, 2018-Ohio-40, ¶ 29 (6th Dist.). Plain error does not result from a trial court's failure to give appropriate limiting instructions regarding Evid.R. 404(B) unless something "suggests the jury used other acts evidence to convict the defendant because he was a bad person." *State v. Carter*, 2018-Ohio-3671, ¶ 53 (8th Dist.), citing *State v. Perez*, 2009-Ohio-6179, ¶ 136. Here, because there was no other-acts evidence implying that Moss was a bad person, the jury could not have convicted him on that basis.

**{¶ 38}** Therefore, the trial court's judgment is affirmed, and Moss's assignment of error is not well-taken.

16.

## V. Conclusion

**{¶ 39}** For the foregoing reasons, the judgment of the Wood County Court of

Common Pleas is affirmed. Moss is ordered to pay the costs of this appeal pursuant to

App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____
                                                          JUDGE

Gene A. Zmuda, J.

Charles E. Sulek, P.J.                  _____
CONCUR.                                                JUDGE

                                        _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.