[Cite as *State v. Love*, 2019-Ohio-3168.]

STATE OF OHIO         )             IN THE COURT OF APPEALS
                        )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

STATE OF OHIO                      C.A. No.     28988

      Appellee

      v.                                APPEAL FROM JUDGMENT
                                  ENTERED IN THE
JENTLE S. LOVE                 COURT OF COMMON PLEAS
                                  COUNTY OF SUMMIT, OHIO
      Appellant               CASE No.     CR 2015-08-2502-B

DECISION AND JOURNAL ENTRY

Dated: August 7, 2019

TEODOSIO, Judge.

**{¶1}** Appellant, Jentle S. Love, appeals from her convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses and remands in part.

I.

**{¶2}** A confidential informant offered information to the police that a Highland Hills police officer ("A.B.") was selling steroids and OxyContin pills. The Summit County Drug Unit arranged for the informant to purchase steroids from A.B. on several occasions within approximately one month. Ms. Love is A.B.'s live-in girlfriend and was present with him at all three controlled buys: one in a Target parking lot, one in a Golden Corral parking lot, and one in the driveway of the informant's apartment. The police later executed a search warrant on the couple's home while Ms. Love was present and recovered various types of steroids, syringes, firearms, OxyContin, Vicodin, Opana, Adderall, Xanax, U.S. currency, and other items related to drug trafficking.

{¶3} A.B. and Ms. Love were both indicted on a litany of drug-related offenses. Following a jury trial, Ms. Love was found guilty of trafficking in drugs, aggravated trafficking in drugs, and possessing drug abuse instruments. She was found not guilty on the remaining counts in the indictment. The trial court suspended a twelve-month prison term and placed Ms. Love on two years of community control.

{¶4} Ms. Love appealed from her convictions, but this Court, by judgment entry, vacated the sentencing entry and remanded the matter back to the trial court for resentencing. *State v. Love*, 9th Dist. Summit No. 28375 (June 27, 2017). Upon remand, the trial court issued a new sentencing entry.

{¶5} Ms. Love now appeals from her convictions and raises four assignments of error for this Court's review. These proceedings were briefly stayed and the matter was remanded back to the trial court once again to issue a nunc pro tunc entry correcting a clerical error in its new sentencing entry. Upon remand, the trial court issued a corrected sentencing entry, which has been made part of the record on appeal.

{¶6} For ease of analysis, we will consolidate two of Ms. Love's assignments of error.

II.

**ASSIGNMENT OF ERROR ONE**

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT FOR TRAFFICKING IN DRUGS, AGGRAVATED TRAFFICKING IN DRUGS AND POSSESSION OF DRUG ABUSE INSTRUMENTS.

**ASSIGNMENT OF ERROR THREE**

THE TRIAL COURT ERRED BY NOT GRANTING DEFENSE COUNSEL'S CRIMINAL RULE 29 MOTION.

{¶7} In her first and third assignments of error, Ms. Love argues that the State presented insufficient evidence to support her convictions and the trial court erred in denying her Crim.R. 29 motion for acquittal. She specifically argues that the State failed to prove the knowingly mens rea for the offenses and failed to prove venue for the possessing drug abuse instruments offense. We disagree with the former, but agree with the latter.

{¶8} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶9} Ms. Love was convicted of trafficking in drugs under R.C. 2925.03(A), which states: "No person shall knowingly * * * [s]ell or offer to sell [anabolic steroids, or p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [anabolic steroids], when the offender knows or has reasonable cause to believe that the [anabolic steroids are] intended for sale or resale by the offender or another person." Because the amount of anabolic steroids involved equaled or exceeded the bulk amount but was less than five times the bulk amount, the

offense was a felony of the fourth degree. *See* R.C. 2925.03(C)(2)(c). She was also convicted of aggravated trafficking in drugs under R.C. 2925.03(A), which states: "No person shall knowingly * * * [s]ell or offer to sell [oxycodone, or p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [oxycodone], when the offender knows or has reasonable cause to believe that the [oxycodone] is intended for sale or resale by the offender or another person." Because oxycodone is a Schedule II drug, the offense was a felony of the fourth degree. *See* R.C. 2925.03(C)(1)(a); R.C. 3719.41, Schedule II (A)(1)(n). Finally, Ms. Love was convicted of possessing drug abuse instruments under R.C. 2925.12(A), which states:

> No person shall knowingly make, obtain, possess, or use any instrument, article, or thing the customary and primary purpose of which is for the administration or use of a dangerous drug, other than marihuana, when the instrument involved is a hypodermic or syringe, whether or not of crude or extemporized manufacture or assembly, and the instrument, article, or thing involved has been used by the offender to unlawfully administer or use a dangerous drug, other than marihuana, or to prepare a dangerous drug, other than marihuana, for unlawful administration or use.

"Knowingly" Mens Rea

{¶10} Ms. Love first argues that the State failed to present sufficient evidence as to the knowingly mens rea for these offenses. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Specifically, Ms. Love claims that she was only present for the controlled buys by coincidence, as she was out shopping with A.B. during one and out to dinner with him for another. She also directs us to the informant's testimony that he never called Ms. Love or knew she would be present for the transactions and A.B.'s testimony that Ms. Love was not involved in his drug trafficking, the drugs were hidden

in a shoebox in a spare bedroom closet, and he told Ms. Love that the informant simply owed him money.

{¶11} The State presented testimony from three officers of the Summit County Drug Unit at trial: Detective Eric Roach of the Cuyahoga Falls Police Department; Detective Robert Scalise II of the Summit County Sheriff's Office; and Detective Nicholas Gray of the University of Akron Police Department. The State also presented testimony from the informant, while A.B. testified as the court's witness. Hidden camera videos from the first two controlled buys were also introduced into evidence as well as a portion of an audio recording of a police interview with A.B. at the time of his arrest.

{¶12} All of the witnesses testified that Ms. Love was present for the first controlled buy in the Target parking lot. By all accounts, the informant remained seated in his vehicle while A.B. opened the passenger side door and leaned inside. The two men conducted the illicit transaction within the informant's vehicle. Although it varied somewhat by witness, the testimony placed Ms. Love no more than ten feet behind A.B. during the transaction. When the informant handed A.B. the money, Detective Roach heard A.B. say the word "here" over the audio equipment, and A.B. immediately turned and handed the money to Ms. Love. All of the witnesses confirmed that A.B. handed the money to Ms. Love.

{¶13} Detectives Roach and Gray were the only officers present for the second controlled buy in the Golden Corral parking lot. Detective Gray conducted surveillance with binoculars while Detective Roach listened with audio equipment. A video from a hidden camera on the informant was also introduced at trial. The video reveals a brief amount of small talk between A.B., the informant, and Ms. Love before A.B. asks, "You have money on you?" The informant replies, "Money? For what?" A.B. replies, "Man" in a dismissive manner and Ms.

Love laughs. While A.B. returns to his truck to retrieve the drugs, the informant says, "Can I just throw it in your purse?" and Ms. Love can be seen taking a few steps toward the informant. Although the actual transfer of the money into the purse cannot be seen in the video, the witnesses all testified that the informant gave the money to Ms. Love.

{¶14} A third controlled buy took place in the driveway of the informant's apartment. A.B., the informant, and Detective Gray all testified that Ms. Love was present. The informant testified that he asked A.B. why he always brings Ms. Love with him, and A.B. replied, "[E]verything is cool." He further testified that, at one point, Ms. Love lifted up A.B.'s shirt to show off his "abs," giggled, and made the comment: "[T]he more stuff you take, the more strength you get."

{¶15} The State also introduced an audio recording of a police interview with A.B. during his arrest. In the portion of the interview played for the jury, A.B. admits that Ms. Love knows he sells steroids. At trial, A.B. testified that he still lives with Ms. Love, does not want her to get in trouble, and would do anything to help her and keep her from getting in trouble.

{¶16} Detective Gray testified that when the police executed a search warrant on the couple's home, they recovered various drugs and contraband. According to the detective, a "stack" of money was recovered from inside a dresser drawer in the master bedroom, near female underwear and bras. A vitamin container with three vials of steroids and syringes inside was found in the bathroom. A.B. testified that Ms. Love did not use that bathroom, but Detective Gray testified that two toothbrushes—one pink and one green—can be seen in a picture of the bathroom that was introduced into evidence.

{¶17} Detective Gray testified that more steroids and opiate pills were found in a shoebox in a spare bedroom closet. A.B. testified that those drugs were his, but he admitted that

he shared the bedroom with Ms. Love, they both used the room as a walk-in closet, and it contained both of their belongings. A.B. testified that a picture of the spare bedroom closet introduced at trial showed Ms. Love's bra and other dirty clothes. He testified that another picture of the spare bedroom showed both his and Ms. Love's shoes.

{¶18} According to Detective Gray, small amounts of many different types and sizes of opiate pills were also found inside a single, unmarked bottle. He testified that, based on his training and experience, this was indicative of a person "stealing those from some sort of hospital or caregiver place to where they only have access to one or two pills at a time." He then testified that Ms. Love is a nurse. Although Ms. Love contends in another assignment of error that this particular evidence was improperly introduced and was the result of prosecutorial misconduct, the Supreme Court of Ohio has emphasized that "the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the State in its case in chief, whether such evidence was properly admitted or not." *State v. Dixon*, 9th Dist. Medina Nos. 11CA0065-M and 11CA0087-M, 2012-Ohio-4428, ¶ 18, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 19.

{¶19} Detective Gray testified that another small container was recovered from inside of a female's shoe in the spare bedroom. It contained a Summa Health System tag on it and was addressed to a man named "J.S." Detective Gray testified that he went to the hospital on the following day and was able to confirm with staff that Ms. Love, in fact, treated J.S. as a patient, and her treatment included the administration of Promethazine, which was the same drug found inside of the small container. While the detective conceded that Promethazine is not a controlled substance, he testified that he was informed it can be used to enhance the effects of opiates.

{¶20} Detective Gray testified that a box of syringes was also found in the spare bedroom closet next to the "big box" of steroids and opiates. The box of syringes contained a shipping label addressed to Ms. Love at the couple's home address.

{¶21} We conclude that the State presented sufficient evidence at trial to establish that Ms. Love knowingly committed the offenses of trafficking in drugs, aggravated trafficking in drugs, and possessing drug abuse instruments. Despite Ms. Love's attempt to downplay her role in the trafficking of drugs, the State introduced ample evidence to show that she was not only aware of the trafficking, but was actively involved to an extent. A.B. admitted to police that Ms. Love knew he was trafficking drugs. Ms. Love was present at several controlled buys and was given the buy money in at least two of them. When questioned as to why Ms. Love was always present for the illicit transactions, A.B. told the informant, "[E]verything is cool." A wealth of contraband was also discovered inside of the couple's home, near and among Ms. Love's personal items, including a box of syringes plainly addressed to Ms. Love. A.B. testified that some of Ms. Love's shoes were in the spare bedroom, and police found a container of drugs inside one of those shoes, which contained drugs addressed to one of Ms. Love's patients at the hospital.

{¶22} While the informant never directly called Ms. Love to set up the transactions, Ms. Love fails to explain why such phone calls would be necessary to establish that she was knowingly involved in drug trafficking with A.B. And although A.B. maintained that Ms. Love was not involved in any drug trafficking, he also admitted that he did not want her to get in trouble and would do anything to keep her out of trouble.

{¶23} After reviewing the evidence in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient

evidence, if believed, that Ms. Love knowingly committed these three offenses. We further conclude that any rational trier of fact could have found the knowingly element of these offenses proven beyond a reasonable doubt. The trial court therefore did not err in denying Ms. Love's Crim.R. 29 motion for acquittal in this respect.

### Venue

**{¶24}** Ms. Love also argues that the State failed to present sufficient evidence to establish venue, specifically for the possessing drug abuse instruments offense. She claims no evidence was introduced to show that her home in Mogadore, Ohio—where she allegedly possessed drug abuse instruments—is actually located in Summit County. She claims that her home is instead located in Portage County.

**{¶25}** "Venue is proper in any county where the offense, or any element of the offense, was committed." *State v. Patterson*, 9th Dist. Lorain No. 16CA011035, 2017-Ohio-8196, ¶ 17, citing R.C. 2901.12(A). Venue is not a material element of an offense, but the State must nevertheless prove venue beyond a reasonable doubt unless it is waived by the defendant. *Id.* "Venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case." *State v. Hobbs*, 9th Dist. Lorain No. 89CA004600, 1990 WL 28102, *1 (Mar. 14, 1990). *See also State v. Dickerson*, 77 Ohio St. 34 (1907), paragraph one of the syllabus.

**{¶26}** The indictment charged Ms. Love with possessing drug abuse instruments "on or about the 12th day of August, 2015, in the County of Summit * * *." The State was therefore required to prove beyond a reasonable doubt that any element of the offense occurred in Summit County. Detective Gray testified that a search warrant was executed at Ms. Love's home, and police discovered syringes and other contraband inside. The parties stipulated at trial that Ms.

Love's home was located at "3952 Highland Drive, Mogadore, Ohio 44260." However, defense counsel argued during his Crim.R. 29 motion for acquittal that venue had not been established for the charges related to the execution of the search warrant at Ms. Love's home. He argued specifically that the village of Mogadore is unique in that it is located partially in Summit County and partially in Portage County. The State made no argument in opposition as to why venue in Summit County was proper. The trial court stated that it "realize[d] Mogadore has a shared jurisdiction with Portage County," but nonetheless denied the Crim.R. 29 motion, noting the parties' stipulation to Ms. Love's address and stating that it "recall[ed] some testimony that the events in this matter took place in Summit County, Ohio." In its merit brief, the State also relies on trial testimony that these transactions occurred in Summit County, Ohio.

{¶27} Our review of the record reveals that witness testimony did, in fact, establish that the controlled buys all took place in Summit County, thereby establishing venue for the two drug trafficking offenses. However, no evidence was introduced at trial to establish that the address of "3952 Highland Drive, Mogadore, Ohio 44260"—where Ms. Love allegedly possessed drug abuse instruments on a later date—was actually in the section of Mogadore that is located in Summit County.

{¶28} Generally, evidence of a street address by itself, without further reference to a city, county, or state, is insufficient to establish venue at trial. *See State v. Myers*, 9th Dist. Summit No. 21874, 2004-Ohio-4195, ¶ 7-9 (finding insufficient evidence to prove venue where no evidence was introduced to show that the location of the assault—"the Suburb Inn on Arlington Street"—was located in Summit County); *State v. Jackson*, 3d Dist. Seneca No. 13-14-30, 2015-Ohio-1694, ¶ 8 (finding insufficient evidence to prove venue when the address where the offense was committed—"346 Elm"—was introduced at trial, but there was no evidence of

the village, city, township, or county where that address was located); *State v. Lahmann*, 12th Dist. Butler No. CA2006-03-058, 2007-Ohio-1795, ¶ 34 ("[T]estimony showing that an offense occurred at a particular street address[—"5436 Lakeside Drive"—]standing alone, is generally insufficient to prove venue, since such addresses often are not 'sufficiently unique' to permit a conclusion that the address is located in a particular city or county."); *State v. Gardner*, 42 Ohio App.3d 157, 157-158 (1st Dist.1987) (determining evidence that the crime was committed at a restaurant located at "'1412 Vine' across the street from the Red Horse Bar at 'the corner next to Krogers[]'" was "not sufficiently unique to permit the conclusion that the restaurant was in Hamilton County, Ohio").

{¶29} When coupled together, evidence of street addresses, cities, and states may, however, be sufficient to establish venue in a certain county if the city lies exclusively within that particular county. *See State v. Williams*, 8th Dist. Cuyahoga No. 107249, 2019-Ohio-992, ¶ 18 (finding sufficient evidence of venue in Cuyahoga County when the street address, city, and state—"West 104th Street in Cleveland, Ohio"—were introduced at trial); *State v. Potter*, 9th Dist. Medina No. 05CA0029-M, 2005-Ohio-6458, ¶ 13 (distinguishing *Myers* and determining that venue was established in Medina County because evidence was introduced of both the city and state—the city of Medina and state of Ohio—where the crimes occurred); *State v. Wilson*, 6th Dist. Huron No. H-13-002, 2014 WL 1343680, *6 (Mar. 7, 2014) (finding sufficient evidence to prove venue when the address where the offense was committed—"315 1/2 Dale Avenue, Willard, Ohio"—was introduced, the city of Willard lies exclusively in Huron County, and the arresting officers worked for the Huron County Sheriff's Department). *See also State v. Brown*, 7th Dist. Mahoning No. 03-MA-32, 2005-Ohio-2939, ¶ 82 (finding sufficient evidence to establish venue where the victim could see her mother at Brown's house when Brown drove the

victim out of the tree area where the crime occurred, Brown lived on Market Street, and a Youngstown police officer was called to Brown's home to arrest him).

**{¶30}** Although the parties stipulated in this case to Ms. Love's street address, city, state, and zip code, there is no indication in the record that "3952 Highland Drive, Mogadore, Ohio 44260" is located within the Summit County section of Mogadore. Because Mogadore spans across two different counties, we can therefore only conclude that the State failed to present sufficient evidence to prove venue as to the possessing drug abuse instruments charge. *See State v. Marcum*, 5th Dist. Fairfield No. 17-CA-35, 2018-Ohio-1135, ¶ 19 (concluding that because the city of Reynoldsburg spans three counties, recitation of an address in the city of Reynoldsburg is insufficient to establish venue in Fairfield County). We likewise conclude that the trial court erred in not granting Ms. Love's Crim.R. 29 motion for acquittal as to the possessing drug abuse instruments charge. *See State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, ¶ 24 ("[A] motion for judgment of acquittal must be granted when the evidence is insufficient for reasonable minds to find that venue is proper."). Ms. Love's conviction for possessing drug abuse instruments cannot stand and, upon remand, must be vacated.

**{¶31}** Accordingly, Ms. Love's first and third assignments of error are overruled in part and sustained in part.

## ASSIGNMENT OF ERROR TWO

THE VERDICT OF GUILTY FOR TRAFFICKING IN DRUGS, AGGRAVATED TRAFFICKING IN DRUGS, AND POSSESSION OF DRUG ABUSE INSTRUMENTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶32}** In her second assignment of error, Ms. Love argues that her convictions are against the manifest weight of the evidence. We disagree.

**{¶33}** This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶34} Ms. Love's manifest weight argument essentially mirrors her sufficiency argument. She again directs us to A.B.'s testimony that Ms. Love was not involved in his drug trafficking as well as the informant's testimony that he never directly contacted Ms. Love to buy drugs. She argues that her presence at the controlled buys was coincidental, as she was simply out shopping and out to dinner with A.B.

{¶35} We note that Ms. Love argues once again that her residence is located in Portage County, not Summit County. Because we have already determined above that Ms. Love's conviction for possessing drug abuse instruments was not supported by sufficient evidence, the question of whether that conviction is against the manifest weight of the evidence has been rendered moot. *See* App.R. 12(A)(1)(c). *See also State v. Jones*, 9th Dist. Summit No. 17213, 1996 WL 37725, *7 (Jan. 31, 1996).

{¶36} Upon review of the record, we cannot say that Ms. Love's drug trafficking convictions are against the manifest weight of the evidence. The trial court was presented with

testimony from several police officers, a confidential informant, and A.B. Videos from two controlled buys, an audio recording of A.B.'s interview with police, contraband discovered in her home, and pictures from inside of her home were also introduced into evidence at trial. "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. In resolving any conflicts in testimony presented at trial, the trier of fact is free to believe or disbelieve any, or all, of the testimony from each witness. *See Haydon* at ¶ 28. The jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13. After reviewing the record and all of the evidence, we cannot conclude that the jury, in resolving any purported conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Moreover, Ms. Love has not demonstrated how this is an exceptional case where the evidence presented weighs heavily in her favor and against conviction. *See Thompkins* at 387.

{¶37} Ms. Love's second assignment of error is overruled.

### ASSIGNMENT OF ERROR FOUR

DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL DUE TO THE PROSECUTORIAL MISCONDUCT OF THE STATE OF OHIO.

{¶38} In her fourth assignment of error, Ms. Love argues that the prosecutor engaged in misconduct during Detective Gray's testimony when he "deliberately asked a question meant to

mislead the jury and to insinuate that [Ms.] Love, a nurse working at a hospital, was stealing drugs from her employer" even though she was not charged with theft. We disagree.

{¶39} Prosecutors must avoid insinuations and assertions calculated to mislead, and they may not allude to matters not supported by admissible evidence. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990), citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced." *State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 22. "'[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial.'" *Id.*, quoting *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6. The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted her. *Id.* "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶40} At trial, Detective Gray testified that many different sizes and types of pills were recovered inside of an unmarked bottle in the Ms. Love's spare bedroom. The following exchange then occurred during the prosecutor's direct examination of Detective Gray:

Q: Now, based on your training and experience as a Summit County drug detective, when you see both the quantity of the individual drugs and the various varieties, what is that indicative of to you?

MR. RILLEY: Objection.

THE COURT: Overruled.

A: That's indicative, when the person has small amounts of pills like that, that those are - - first suspect, in my training and experience, they're going to be stealing those from some sort of hospital or caregiver place to where they only have access to one or two pills at a time.

Q: And [Ms.] Love is a nurse?

MR. RILLEY: Objection, Your Honor.

THE COURT: Overruled.

A: Yes, she is.

{¶41} Upon review, we see no indication that the prosecutor's questions were improper or intended to mislead the jury. The State was burdened with proving Ms. Love was knowingly trafficking drugs and knowingly possessed the contraband found in her home. The prosecutor inquired as to the detective's training and experience as it related to the amounts and types of drugs discovered in Ms. Love's home. The detective revealed, based on his training and experience, where offenders typically acquire small quantities of many different drugs, such as those discovered in this case. The prosecutor's follow-up question, noting Ms. Love's occupation as a nurse, supported the State's theory that she was knowingly involved in possessing and trafficking the drugs found in her home. Accordingly, we cannot agree with Ms. Love's claim of prosecutorial misconduct.

{¶42} Even assuming arguendo that the prosecutor's questions were improper, Ms. Love has failed to show that, but for this misconduct, the jury would not have convicted her. *See State v. Ecker*, 9th Dist. Summit No. 28431, 2018-Ohio-940, ¶ 31. The State set forth a wealth of evidence establishing Ms. Love's involvement in drug trafficking with her boyfriend. We therefore conclude that the testimony relating Detective Gray's training and experience in typical drug investigations to the drugs found in Ms. Love's home, along with testimony that Ms. Love is a nurse, did not affect the outcome of her trial.

{¶43} Ms. Love's fourth assignment of error is overruled.

III.

**{¶44}** Ms. Love's first and third assignments of error are overruled in part and sustained in part. The cause is remanded for further proceedings consistent with this opinion, specifically for the trial court to vacate Ms. Love's conviction for possessing drug abuse instruments. Her second and fourth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.


THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.